HIGLEY and another *against* BUNCE and others :

### IN ERROR.

The power given by the statute authorizing towns to make by-laws for re-straining cattle, (*tit.* 101. *s.* 7.) to the town, to direct the mode of publica-tion, extends to all the preceding provisions relating to that subject ; and the exercise of that power, by the town, is essential to give validity to the by-law.

Therefore, where the plaintiff, in an action of replevin, avowed the taking under a by-law of the town of *C.*, and after reciting it, averred, that "the by-law was published, as the law directs, and by order of the town-clerk, four weeks successively, in a public newspaper printed in the town of *L.*, the said newspaper being one published nearer to the said town of *C.* than any public newspaper printed in this state, and generally circulated in and among the inhabitants of said town of *C.;*" it was held, that this publica-tion, not being made by direction of the town, was ineffectual, and the by-law was not valid.

THIS was an action of replevin, alleging, That the defend-ants, on the 27th of *May*, 1833, at *Canaan*, from and off the land of the plaintiffs, with force and arms, took certain beasts particularly described, and them impounded and detained.

The defendants avowed the taking of the beasts, on the public highway, in the town of *Canaan*, on the day mentioned in the declaration ; *because* a meeting of the legal voters of the town of *Canaan* was legally holden, on the 1st of *Octo-ber*, 1832, after a warning with special notice of the object ; which meeting, being duly organized, passed a certain by-law "for restraining neat cattle from running out of the owner's en-closure and at large, in and upon the commons or public high-way," in the following terms : "VOTED, that if any owner of any neat cattle shall suffer the same to go at large, or out of

HARVARD LAW LIBRARY

his enclosure, such owner shall forfeit and pay to the person

who shall take up and impound the same, the sum of 25 cents, for each creature so found at large, or out of the owner's enclosure, or taken up.

" VOTED, that it shall be lawful for any person to impound any creature, so found out of the enclosure of the owner at large; and any person so impounding any creature shall give notice thereof to the owner, and proceed according to the 3rd and 4th sections of a certain statute law of this state, entitled ' An Act to provide Pounds and to regulate the impounding of Creatures ;' and the owner of creatures so impounded shall not receive the same from the pound until he shall have paid to the person so impounding the same the amount of the forfeiture, and to the pound-keeper the amount of his fees and expenses for keeping said creatures, as in other cases of creatures impounded : Provided nevertheless, that any person who has a family residence within said town, who shall get permission, by a certificate in writing, from the select-men of said town, may suffer one milch cow to run at large, on the public highway, between the rising and setting of the sun, each day, and not incur the said penalty." The avowry then averred, that said by-law was published as the law directs, by order of the town-clerk of said town, four weeks successively, between said 1st day of *October* and the 2nd day of *November* then next ensuing, in the *Litchfield Enquirer,* a public newspaper printed in the town of *Litchfield,* the said newspaper being one published nearer to the said town of *Canaan* than any public newspaper printed in this state, and generally circulated in and among the inhabitants of said town of *Canaan ;* that on the 1st of *May,* 1833, the plaintiffs turned said cattle out of their enclosure and at large, to range and feed in and upon the commons and public highway in said *Canaan ;* and the said cattle, so turned out, did run at large, range and feed in and upon the commons and public highway aforesaid, to the great injury and inconvenience of the good people of said town, for the space of four weeks, the plaintiffs having, all the time aforesaid, full knowledge of the same. The defendants, therefore, avowed the taking of said cattle then and there found.

The plaintiffs replied, that at the time the defendants took and impounded the plaintiffs' cattle, said cattle were peaceably and quietly depasturing within the local limits of said high-

way, and adjacent to and upon the plaintiff's land and soil, and not adjacent to or upon the lands of any other person; and the said cattle, at the time they were so taken and impounded, were not, in thus depasturing, incommoding or disturbing the public, or the defendants, or either of them, in the free use and enjoyment of said highway, or any part thereof.

To this replication there was a general demurrer.

The court to which the action was originally brought, adjudged the replication insufficient; and, on a writ of error in the superior court, that judgment was affirmed. On motion in error by the plaintiffs, the case was then brought before this Court for revision.

*L. Church*, for the plaintiffs, contended, That the judgment is erroneous, 1. because the by-law under which the defendants justify, is void.

First, it deprives the owners of lands adjoining the highways from despasturing thereon, when the public are not incommoded thereby, without providing any compensation.

Secondly, it permits certain individuals to despasture on the highway, without providing any compensation to the adjoining proprietor. *Stackpole* & al. v. *Healy*, 16 *Mass. Rep.* 33. 36, 7.

Thirdly, it prohibits the owner of unenclosed lands from suffering his cattle to run at large thereon. *Com. Dig. tit.* By-law. C. 4.

Fourthly, it does not appear, that the by-law was published according to law. The statute (*tit.* 101. *s.* 7. *p.* 458.) specifies three modes of publication, and authorizes the town to *direct* which of them, in any particular case, shall be pursued. But here the record does not shew, that the town gave any direction on the subject. The town-clerk acted without authority. There is no averment that there was no newspaper printed in the town of *Canaan.* And if the language of the avowry is taken according to its grammatical and most natural construction, the word "circulated" being referred to its last antecedent, *viz.* "any public newspaper," and connected with the phrase "printed in this state," by the copulative "and," there is no averment that the *Litchfield Enquirer* was circulated in the town of *Canaan.* The avowry only shews, that *Litchfield* is nearer to *Canaan* than any other place in this state where a newspa-

*Litchfield,*
June, 1835.

Higley
*v.*
Bunce.

per is printed, that is generally circulated in *Canaan.* This does not satisfy the statute.

If the phrase " as the town shall direct," relates only to the last clause, or the two last clauses, in the section, the construction will not help the defendants.    In that case, the first clause would imperatively require a publication in a newspaper printed in the town, if there was one printed in it;  and it does not appear, as before suggested, that there was none.

Fifthly, if the by-law is void in part, for either of the causes specified, it is void *in toto.    Com. Dig. tit.* By-law. 6.    *The King* v. *Atwood,* 4 *Barn.* & *Adol.* 481.    (24 *Serg.* & *Lowb.* 107.)

2.  That the avowry does not answer the charge of the unlawful taking and impounding.

*T. Smith* and *Raymond,* for   the  defendants, insisted, 1.  That the by-law in question is valid.    In the first place, its terms and provisions are within the powers delegated to towns, by the statute.    *Stat.* 158. *tit.* 101. *s.* 7.

Secondly, the statute authorizing the by-law is valid and constitutional.    *Nightingale's* petition, 11 *Pick.* 168.    *Gilman* v. *Holt,* 4 *Pick.* 258.

Thirdly, the provisions of the by-law do not impair the rights of proprietors of land adjoining highways.

Fourthly, it appears by the avowry, that the proper measures were taken to give force and effect to the by-law;  especially, that it was duly published.    The provision of the statute is *in the alternative.    Either* of the three  modes of publication specified, may be pursued.    The  phrase "as the town shall direct" is applicable  only to the last clause ;  *i. e.* among the " other newspapers" referred to in that clause, the  town is to direct which of them shall be selected.    If either of the modes of publication previously specified,  is adopted, no direction of the town is necessary.

2.  That the unlawful taking set forth in the plaintiffs' declaration, is answered by the avowry.

3.  That the plaintiffs, by their replication, admit the sufficiency of the avowry.

HUNTINGTON, J.   Several questions are presented, by this record, upon which we do not think it necessary to express an

HARVARD LAW LIBRARY

*Litchfield,*
*June, 1835.*

*Higley*
*v.*
*Bunce.*

opinion ; as there is one error assigned, which, in our judg-ment, is sufficient to require the reversal of the judgment of the court below.

The statute (revision of 1821) *tit.* Towns. *s. 7. p.* 458., enacted, that "every town, at a lawful meeting, warned for that purpose, shall have power to make by-laws for restraining horses, cattle, asses, mules, swine, sheep, and geese, from going at large, and for regulating such as shall go at large : provided that no penalty for any breach of such by-law shall exceed three dollars; and that such by-laws shall not be in force till published four weeks successively, in a newspaper printed in such town, or in the town nearest to such town in which a newspaper is printed, or in some other newspaper generally cir-culated in the town where such by-law is made, as the town shall direct."

The plea recites the by-law, passed by the town of *Canaan,* (which contains no direction as to the publication of it.) and then avers, that " the said vote or by-law was published, as the law directs, and by order of the town-clerk of said *Canaan,* four weeks successively, between said first day of *October* and the second day of *November* then next ensuing, in the *Litch-field Enquirer,* a public newspaper printed in the town of *Litchfield,* the said newspaper being one published nearer to the said town of *Canaan* than any public newspaper printed in this state, and generally circulated in and among the inhab-itants of said town of *Canaan.*"

The replication admits the truth of this averment.

It appears, then, from the record before us, that there was, in fact, a publication of the by-law, in a newspaper printed in a town nearest to the town of *Canaan* in which a newspaper is printed ; and that such newspaper generally circulated in the town of *Canaan :*—but it does not appear, that this publica-tion was made in pursuance of any order or vote of the town, or that the town, in any manner, designated the newspaper in which the by-law was to be published : nor is it averred, that there was not a newspaper printed in *Canaan.* The plain-tiffs in error insist, that there has been no legal publication of this by-law ;—that the statute imposes on the town the duty of designating one of three descriptions of newspapers in which it shall be printed ;—and that having neglected to give this ne-

cessary direction, the by-law, under which the defendants justify, has never been " in force."

*Litchfield*,
June, 1835.

Higley
*v.*
Bunce.

We think this objection to the validity of the by-law, must prevail. We are unable to give any other construction to the legislative enactment, consistent with its language or object, than that which requires the town to direct the mode of publication, by pointing out one of three descriptions of newspapers in which the by-law shall be printed.

It would be difficult to adopt words more expressive of the duty of the town, in this respect, than those which are used in this statute. The publication is to be made through the medium of a newspaper : and it must be one printed in the town, *or* in the town nearest to such town, in which a newspaper is printed, *or* in some other newspaper generally circulated in the town where such by-law is made, *as the town shall direct.* The direction to publish, and in one of three modes specified, is peremptory ; but the authority to select one of these three modes of publication, which are put, by the statute, in the alternative, is confided to the discretion and sound judgment of the town ; and the corresponding duty to exercise that discretion, by making the selection, is enforced, by causing the validity of the by-law, to depend upon its exercise. The words "as the town shall direct," have an obvious application to the whole preceding provision relating to the publication. They are immediately subsequent to the provision referred to, in the order of the entire sentence, and seem, as clearly as language can indicate, intended to apply to, and controul the whole of the previous enactment relating to the publication. It was, indeed, suggested, that they might be confined to that part of the sentence immediately preceding, which authorizes a publication " in some other newspaper generally circulated in the town where such by-law is made." We do not concur in this suggestion. We think it is not in accordance with the ordinary import of the words ; nor with the order in which they appear in the statute ; nor with the general rule of construction, which requires, in the absence of any other controuling principle, that the words used in a statute are to be taken in their common and popular sense, and to have such an application as is consistent with their natural import, and with the arrangement and grammatical construction of the sentence of which they form a part. In our opinion, it would do violence to the words used,

HARVARD LAW LIBRARY

*Litchfield,*
*June, 1835.*

Higley
*v.*
Bunce.

to affix any other meaning to them, than that which gives to them an application consonant with the frame and structure of the paragraph in which they are used. We do not feel ourselves at liberty to say, that the phraseology of this statute authorises a construction, which requires the discretion of the town to be exercised, only where the publication is to be made in some newspaper generally circulated in the town, and not printed in that town, or in the town nearest to it in which a newspaper is printed. We cannot alter the arrangement of the words, any more than we can change the words themselves; nor can we limit, by construction, the language of the statute, where its object does not require it.

If the view which we have thus taken of the case, be correct, it is embraced by the words of the statute, and also by the principles settled by this court, in *Willard* v. *Killingworth Borough*, 8 *Conn. Rep.* 247., which we consider entirely reasonable. In that case, we said, that "boroughs and towns are, confessedly, inferior corporations. They act not by any inherent right of legislation, like the legislature of the state; but their authority is delegated, and their powers, therefore, must be *strictly* pursued."

The same result to which we have arrived, by consulting the words of the statute, and the connexion in which they stand with each other, will follow from an examination of the object and consulting the spirit of the law.

The power which is given to towns to make by-laws for restraining horses and other animals from going at large, and for regulating such as shall go at large, has, when exercised, a direct and important effect upon the interests of individuals. It not only operates to deprive them of what they deem a benefit, but, if resisted, subjects them to penalties, expenses, and, as the case may be, much inconvenience. It was considered highly reasonable, that some further notice should be given of the existence of these by-laws than would be furnished, by the records of the town, which passed them. The statute, therefore, provided, that they should " not be in force," until they were published: and in directing the mode of publication, the legislature had in view, the adoption of one which would be most suitable and best adapted to give notice of the existence of the by-law, to all who might be affected by its provisions. It was forseeen, that the publication in a newspaper printed in the

town where the by-law was made, might not furnish as extensive notice, as a publication in one printed in a town nearest to such town ; and that the notice might be more general, by omitting to publish in either of such newspapers, and substituting one which had a general circulation in the town, without reference to the place where it was printed. It was supposed, that the great object of publication—that of giving the most effectual notice—would be most fully answered, by vesting a discretionary power somewhere, to adopt that one of the three modes specified in the statute, which would best secure that object : and that discretion was accordingly vested in the town, who make the by-law,—whose inhabitants are to be subject to its provisions,—and who are presumed to be most competent to determine which mode of publication will best subserve the purpose of general information. It was not left to any officer of the town, or any individual inhabitant, to judge in this matter. His discretion was not made the rule, by which the manner of giving notice was to be regulated. The responsibility and duty were cast upon the town, to order the publication, through the medium of a newspaper, in such manner as, in its judgment, was best adapted to accomplish the end proposed by the legislature ; and yet its discretion was limited, by requiring the publication to be made in one of three descriptions of newspapers mentioned in the statute. If we have rightly interpreted the design of this legislative enactment, and the object intended by giving the power to the town, to direct the publication in the alternative, we think it very clearly follows, that the town must exercise that power, by directing the mode of publication, before the by-law imposes any legal obligation. Without the order of the town, there can be no valid publication. The town alone is competent to make the order ; and upon the town devolves the duty of making it. We perceive no hardship in this requirement. It is reasonable in itself ; it may be followed without inconvenience ; and it promotes the important object contemplated by the legislature.

Another beneficial result will follow from the construction we put upon this section of the statute, and which, we think, was intended by the legislature. By requiring the town to designate one of the modes of publication specified in the act, it can, with more certainty, be ascertained, whether the by-law is " in force." Individuals who are interested in the subject mat-

*Litchfield,*
June, 1835.

Higley
*v.*
Bunce.

*Litchfield,*
*June, 1835.*

Higley
*v.*
Bunce.

ter of the regulation—those who are desirous of enforcing it against others, and those who wish to obey it, if legally binding,—and those also to whom its provisions are obnoxious, and who wish to disregard it, if " not in force," may examine the records of the town, which are public and open to inspection, and *from them* learn in what manner the publication was directed to be made. They are not compelled to enquire of those who may not be disposed to inform them, or who, by mistake or design, might mislead them, *where* it was published,—whether in a paper printed in the town, or in some other town. They need not rely on the courtesy or accuracy of any one, for information necessary to regulate their conduct ; but may obtain it from the record in the town-clerk's office ; and thus, with certainty, ascertain their rights and duties, so far as they depend upon the publication of the by-law.

Upon the whole, we think, for the reasons stated, there is error in the judgment of the superior court, and that it must be reversed.

In this opinion the other Judges concurred, except Church, J., who gave no opinion.

Judgment reversed.