## HOPE v. SEAMAN et al.

(Supreme Court, Special Term, Kings County.   February 13, 1909.)

1. JUDGMENT (§ 495*)—COLLATERAL ATTACK—PRESUMPTION—JURISDICTION OF PARTIES.

Jurisdiction of all parties to an action is to be presumed, on collateral attack, under the rule that every intendment will be indulged in favor of the validity of the judgment.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 933, 934; Dec. Dig. § 495.*]

2. JUDGMENT (§ 668*)—CONCLUSIVENESS.

A judgment is conclusive on all the defendants, unless the presumption of jurisdiction be overcome by competent proof and the contrary be established as to one or more of the parties defendant.

[Ed. Note.—For other cases, see Judgment, Dec. Dig. § 668.*]

3. JUDGMENT (§ 490*)—COLLATERAL ATTACK—WANT OF JURISDICTION—PARTIES.

Plaintiff in partition *held* entitled to collaterally attack a foreclosure decree against her for want of jurisdiction of her person because of insufficient service.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 926–928; Dec. Dig. § 490.*]

4. JUDGMENT (§ 495*)—WANT OF JURISDICTION—BURDEN OF PROOF.

The burden of proof is on a party asserting, on collateral attack want of jurisdiction of her person because of insufficient service, to overcome the presumption of regularity and conclusiveness by a fair preponderance of evidence.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 933, 934; Dec. Dig. § 495.*]

5. INFANTS (§§ 78, 80*)—APPEARANCE—GUARDIAN AD LITEM—SERVICE.

An infant, when interested in property in litigation, could only appear therein by guardian ad litem to be appointed after service of the summons on her personally or by publication, as provided by Code Civ. Proc. §§ 416, 426, 438, 441, 471.

[Ed. Note.—For other cases, see Infants, Cent. Dig. § 195; Dec. Dig. §§ 78, 80.*]

6. PROCESS (§ 83*)—SERVICE WITHOUT STATE.

Where plaintiff, while an infant owning an heir's interest in property in controversy, and her husband, were served with copies of summons and complaint in a suit to foreclose a mortgage on the property, instituted in New York, at their home in New Jersey, without any order for service of summons by publication or without the state, the service was insufficient.

[Ed. Note.—For other cases, see Process, Dec. Dig. § 83.*]

7. INFANTS (§ 90*)—INFANT DEFENDANT—JURISDICTION.

The unauthorized appearance of an attorney for a nonresident infant defendant not properly served, and for whom no guardian ad litem was appointed, was a nullity and conferred no jurisdiction over her.

[Ed. Note.—For other cases, see Infants, Cent. Dig. §§ 273–274; Dec. Dig. § 90.*]

8. JUDGMENT (§ 668*)—FORECLOSURE—INTEREST OF PARTIES.

Where no jurisdiction was obtained over a nonresident heir of the deceased mortgagor in a suit to foreclose the mortgage, her interest was not devested by the foreclosure decree and sale.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1181–1188; Dec. Dig. § 668.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

9. JUDGMENT (§ 492*)—COLLATERAL ATTACK—UNAUTHORIZED APPEARANCE.

A judgment against a party on appearance by attorney cannot be collaterally attacked on the ground that the attorney had no authority.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 930; Dec. Dig. § 492.*]

10. PARTIES (§ 66*)—DESIGNATION OF INDIVIDUAL.

That "James Benjamin Oric Shevill" was named in a summons and complaint as "Benjamin J. Oric Shevill" did not make him the less a party to the action.

[Ed. Note.—For other cases, see Parties, Cent. Dig. § 108; Dec. Dig. § 66.*]

11. JUDGMENT (§ 653*)—RES JUDICATA.

Where a party to a foreclosure proceeding applied therein for an order setting aside the decree as against him on the theory that the appearance of an attorney therein for him was unauthorized, which motion was denied after hearing, the order, while unreversed, was res judicata of the conclusive character of the foreclosure decree against him.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1160; Dec. Dig. § 653.*]

12. MORTGAGES (§ 554*)—FORECLOSURE—SHERIFF'S DEED—EFFECT.

Where the court in mortgage foreclosure proceedings has jurisdiction of the subject-matter and of all the parties in interest, a sheriff's deed pursuant to the decree, purporting to convey the fee, conveys all right, claim, lien, interest, estate, and equity of redemption of all the parties to the foreclosure suit from the date of the giving of the mortgage; the entire estate of the mortgagor and mortgagee at that time vesting in the purchaser as if the equity of redemption had been foreclosed as provided by Code Civ. Proc. § 1632.

[Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 554.*]

13. HUSBAND AND WIFE (§ 169*)—WIFE'S SEPARATE PROPERTY—MORTGAGE—JOINDER OF HUSBAND.

A husband is not a necessary party to a mortgage on the separate property of his wife.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 661; Dec. Dig. § 169.*]

14. CURTESY (§ 10*)—"CURTESY INITIATE"—NATURE OF ESTATE—ALIENATION.

A husband's curtesy initiate is merely a status, and not a vested right; nor is it separately alienable during coverture, but a mere possibility or expectancy, which may be destroyed at the will of the owner of the fee, and, not being coupled with any interest in the property, cannot be made the subject of mortgage or transfer.

[Ed. Note.—For other cases, see Curtesy, Dec. Dig. § 10.*

For other definitions, see Words and Phrases, vol. 2, p. 1798.]

15. CURTESY (§ 11*)—FORECLOSURE—PARTIES—TENANT BY THE CURTESY.

Where a mortgage on a wife's separate property was foreclosed after her death, and the husband, who was made a party by reason of his right to redeem as tenant by the curtesy, was properly served and defaulted, after which a decree was passed that defendants, including the husband, be forever barred and foreclosed of all right, title, interest, and equity of redemption in the premises, his equity of redemption was extinguished by the sale.

[Ed. Note.—For other cases, see Curtesy, Cent. Dig. §§ 31–42; Dec. Dig. § 11.*]

16. MORTGAGES (§ 585*)—FORECLOSURE—MERGER.

A mortgage on foreclosure merges in the judgment.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1683; Dec. Dig. § 585.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

17. MORTGAGES (§ 497*)—DECREE—"FOREVER BARRED AND FORECLOSED."

The words "forever barred and foreclosed," as used in a mortgage fore-
closure decree, mean shut out and excluded from all right, claim, title, or
interest in the mortgaged premises.

[Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 497.*]

18. REMAINDERS (§ 17*)—RIGHTS OF REMAINDERMEN—POSSESSION—TERMINA-
TION OF PRECEDING ESTATE.

Where an estate by curtesy of a surviving husband was extinguished by
foreclosure of a mortgage given by the wife, certain of the remaindermen
not having been made parties to the suit, the right of the remaindermen
to possession was not postponed until the death of the life tenant, under
the rule that a remainderman has no right to possession until the termina-
tion of the preceding life estate; but the remainderman's right of action
for possession accrued at once.

[Ed. Note.—For other cases, see Remainders, Cent. Dig. §§ 12–17; Dec.
Dig. § 17.*]

19. SUBROGATION (§ 35*)—EQUITABLE SUBROGATION—WAIVER.

Where the right of redemption of a tenant by curtesy was barred by a
mortgage foreclosure decree, the purchaser's equitable right of subroga-
tion to succeed to the curtesy tenant's possession must have been asserted
in order to have been available, and, unless asserted by an affirmative
act, was waived.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 107, 108;
Dec. Dig. § 35.*]

20. MORTGAGES (§ 542*)—FORECLOSURE—POSSESSION OF PURCHASER.

Where a foreclosure decree cut off a curtesy tenant's equity of redemp-
tion, there was no legal presumption that the purchaser was in possession
as succeeding to the possession of the curtesy tenant, or that he would
have asserted a right to such subrogation on demand, since no person is re-
quired to assert any claim or right to property or any relation thereto,
unless he wishes to, even when called on to do so, though it may be bene-
ficial to his property rights.

[Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 542.*]

21. PARTITION (§ 44*)—DEFENSES—LACHES.

Plaintiff was advised of an action to foreclose a mortgage on property
in controversy in which she was interested as heir in June, 1886. She
conversed with her husband concerning it, and was fully apprised that it
belonged to her brothers and herself; but, though she resided but a short
distance therefrom, and for a larger part of the time in the same city, she
did nothing to assert her interest in the property until July 17, 1907.
*Held*, that plaintiff was barred by laches from maintaining a suit for par-
tition to recover her interest, though the foreclosure decree was void as
against her.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 111–113; Dec.
Dig. § 44.*]

22. ADVERSE POSSESSION (§ 76*)—COLOR OF TITLE.

Where more than 20 years has elapsed since the sale of certain prop-
erty in controversy under a foreclosure decree which was void for want
of jurisdiction as against plaintiff, during which the purchaser and his
grantee had held possession adversely under the sheriff's deed, the grantee
had title by adverse possession.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 451–
454; Dec. Dig. § 76.*]

23. LIMITATION OF ACTIONS (§ 19*)—PARTITION—TIME.

Where property in which plaintiff was interested was sold under mort-
gage foreclosure decree on September 15, 1886, and she was then of age,
but took no steps to assert any rights in the property until July, 1907, her
right to partition of the property, on the ground that the judgment was

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

void as against her, was barred by the 20-year statute of limitations prescribed for actions to recover real property or the possession thereof by Code Civ. Proc. § 365.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 77; Dec. Dig. § 19.*]

Action by Sarah E. Hope against Charles O. Seaman and others. Judgment for defendants.

H. Lionel Kringel, for plaintiff.

Charles G. F. Wahle, for defendant James B. O. Shevill.

S. M. & D. E. Meeker (John C. Loud, of counsel), for defendant Charles O. Seaman.

George P. Foulk, for defendant Emma Kroos, mortgagee.

MADDOX, J.   Plaintiff seeks to maintain partition, claiming to own in fee an undivided one-fifth part or share of the real property described in the complaint, being the mortgaged property sold pursuant to the judgment of foreclosure and sale in Hoople against Shevill and others, on September 15, 1886.   Her contention is that, as she was not cut off and foreclosed by that judgment and the sale thereunder, she still has, as heir at law of the mortgagor, Sarah S. Shevill, her mother, such estate.   The defendant James Benjamin Oric Shevill, her brother, and otherwise known as Benjamin J. Oric Shevill, by his answer, makes like claim to an estate in fee of an undivided one-fifth part of said premises.

On May 1, 1874, said Sarah S. Shevill and Benjamin Shevill, her husband, executed and delivered to one William H. Hoople their bond to secure the payment of $4,000, and on the same day, and as collateral security therefor, they executed and delivered to said Hoople the mortgage foreclosed in Hoople against Shevill and others; the property covered thereby being the separate estate of said Sarah S. Shevill. There now is, and since the making of said mortgage there has been, a dwelling house on the property, and the bond and mortgage above referred to were, before the commencement of the foreclosure action, duly assigned to William G. Hoople, the plaintiff therein.

Said Sarah S. Shevill died about February 7, 1875, seised and possessed of said premises, but subject to the Hoople mortgage, leaving her surviving, Benjamin Shevill, her husband, who died on July 27, 1891, four sons and one daughter, viz., Benjamin J. Oric, here called James Benjamin Oric, George R., Joseph Lincoln, Edwin Leslie and Sarah E., the plaintiff here, all of whom were of adult age at the time of the commencement of the Hoople foreclosure action except said Sarah E. and Edwin Leslie, who were both then over the age of 14 years.

The Hoople foreclosure was commenced in July, 1885, and the curtesy tenant, Benjamin Shevill, and all the heirs at law of the mortgagor, Sarah S. Shevill, together with the wives and husband of those then married, were made parties defendant in that action.   The complaint therein, among other things, prayed judgment that the defendants may be "barred and foreclosed of all right, claim, lien, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

·equity of redemption in said mortgaged premises"; that the same be decreed to be sold and the mortgage debt as found to be due and the costs and expenses of the action be paid from the proceeds of sale; and that plaintiff have judgment against Benjamin Shevill for any deficiency. Judgment of foreclosure and sale was duly made and entered ·therein on July 14, 1886, directing, as required by section 1626 of the Code of Civil Procedure, the "sale of the property mortgaged, or of such. part thereof as is sufficient to discharge the mortgage debt, the expenses of the sale, and the costs of the action," and, among other things, adjudged:

"That each and all of the defendants are forever barred and foreclosed of .all right, claim, lien, title, interest, and equity of redemption in said mort-.gaged premises, and each and every part thereof."

Sale thereunder was had on September 15, 1886, the plaintiff in that action being the purchaser, a deficiency resulting. On the same day the sheriff's deed conveying said mortgaged premises was executed and delivered to said purchaser, and recorded in the Kings county register's office. The defendant Edwin Leslie Shevill appeared in that action by Gen. Catlin as his guardian ad litem, appointed therein upon the petition of .said infant, who was then over 14 years of age, and no question is raised as to the conclusiveness of said judgment against all the defendants in that action, except the claims of the plaintiff here and the defendant James Benjamin Oric Shevill that they are not bound thereby.

The judgment is regular on its face, containing all the necessary jurisdictional recitals, and the roll is apparently complete, for, notwithstanding that the Gaillard affidavit is insufficient to show due and proper service on the defendants Weifenbach, there is the notice of appearance of Gen. Catlin, then a practicing attorney in this county, as attorney for them therein, and there is no suggestion therein of the infancy of said Sarah E. Weifenbach. Hence jurisdiction of all the parties to that action is to be presumed. Every intendment should be in favor ·of its validity, and that judgment is now conclusive upon all the defendants therein, unless that presumption of jurisdiction be overcome by competent proof, and the contrary be established as to one or more ·of such parties defendant. Ferguson v. Crawford, 70 N. Y. 253, 257, 26 Am. Rep. 589; Id., 86 N. Y. 609, 611; Hayes v. Kerr, 19 App. Div. 91, 110, 45 N. Y. Supp. 1050; Woodward v. Mutual R. L. Ins. Co., 178 N. Y. 458, 488, 71 N. E. 10, 102 Am. St. Rep. 519. Plaintiff ·may present that question in this action (Satterlee v. Kobbe, 173 N. Y. 91, 95, 65 N. E. 952; Wallace v. McEchron, 176 N. Y. 424, 436, 68 N. E. 663), though thereby collaterally attacking the conclusiveness of the judgment of foreclosure, by denying that the court in the Hoople Case had acquired jurisdiction as to her (Ferguson v. Crawford, supra; Woodward v. Mutual R. L. Ins. Co., supra; O'Donoghue ·v. Boies, 159 N. Y. 87, 98, 53 N. E. 537; Hoes v. N. Y., N. H. & H. R. Co., 173 N. Y. 435, 439, 66 N. E. 119); but the burden is upon the party asserting the want of such jurisdiction to overcome, by a fair ·preponderance of evidence, the presumption of regularity and con-·clusiveness.

Plaintiff here asserts that she was at that time a nonresident infant, reaching her majority on August 13, 1886, one month after the making and entry of the judgment of foreclosure, and a month prior to the day of sale. She married William Weifenbach on March 12, 1885, immediately going with him to Jersey City Heights, N. J., where they lived until September, 1889, when they returned to this state to live. He died in October, 1889, and in 1894 she again married. The Gaillard affidavit in the foreclosure action is incomplete. It is silent as to where the service on the plaintiff here was made, though it states that the summons and complaint were in fact served upon her and upon her husband on July 19, 1886. Plaintiff, as a witness here, testified that the papers then produced, and marked in evidence "Exhibits 1 and 2," being two sets of copies of the summons and complaint in the foreclosure action, were "in June, 1886," left with her and her husband at their home in Jersey City Heights, N. J., and that from June 19, 1886, until delivered by her to her counsel in this case, they had been in her care and custody. No service upon her, other than that by Gaillard, has been shown or claimed, nor was any order for service of summons by publication or without the state obtained; and the service so made was insufficient to give the court jurisdiction as to her for any purpose. She was an infant and could appear therein only by guardian ad litem, to be appointed after service of the summons upon her, either personally or by publication. Code Civ. Proc. §§ 416, 426, 438, 441, 471. No guardian ad litem was appointed for her in that action, and the appearance of Gen. Catlin, as her attorney, was unauthorized. It was not binding on her, but was a nullity, and gave the court no jurisdiction over her. Ferguson v. Crawford, supra; Ingersoll v. Mangam, 84 N. Y. 622, 625; Darrow v. Calkins, 154 N. Y. 503, 512, 49 N. E. 61, 48 L. R. A. 299, 61 Am. St. Rep. 637.

It thus follows that as to plaintiff the judgment was not conclusive, and the sale thereunder did not divest her, as an heir at law of the mortgagor, Sarah S. Shevill, her mother, of her equity of redemption in said mortgaged property. She still has that interest, unless her right thereto was, at the time of the commencement of this action, barred by operation of law.

The defendant James Benjamin Oric Shevill claims that his name has never been Benjamin J. Oric Shevill, as it appears in the title of the foreclosure action, that he was never served with the summons therein, and that he never authorized Gen. Catlin, who appeared as his attorney in that action, so to do. I was not favorably impressed with his testimony. I believe, from all the evidence in the case, that there was such authority to appear for him; but, however that may be, he is bound by such appearance and cannot here attack the judgment of foreclosure and sale for want of jurisdiction. Brown v. Nichols, 42 N. Y. 26, 30; Ferguson v. Crawford, supra; Post v. Charlesworth, 66 Hun, 256, 258, 21 N. Y. Supp. 168; Washbon v. Cope, 144 N. Y. 287, 294, 39 N. E. 388. There is no merit in his objection that, because two of his Christian names were transposed, he was not made a party to that action. He was there sued as Benjamin J. Oric Shevill. He says that his correct name is, as stated in the title of this action,

James Benjamin Oric Shevill, and, in the petition for administration on his father's estate, we find he is referred to as J. B. Oric Shevill. It appears that his father's name was simply Benjamin Shevill and I fail to see where any confusion or doubt could possibly arise by reason of placing the "J." for James, after the name "Benjamin," instead of before it. His parents had five children, and it appears that he was the only one having the Christian names James Benjamin Oric, however they may be arranged.

But in addition to all said above as to his claim, it appeared that in September, 1907, he made a motion upon affidavits, in the Special Term of this court in the Hoople foreclosure action, for an order setting aside, as against him, the judgment in that action, upon the same ground as here urged, i. e., that the appearance of the attorney Catlin for him was unauthorized. The defendants Seaman and Kroos appeared by attorneys upon the return and argument of the motion, and submitted affidavits in opposition. That motion was denied by an order dated September 9, 1907, filed and entered on the following day in the clerk's office, and the determination of that motion is, as between him and the defendants Seaman and Kroos, res adjudicata, final, and conclusive until that order is reversed by an Appellate Court.

Thus it follows that the judgment of foreclosure and sale under consideration was conclusive as to all the parties to that action, and to all persons in interest, except the plaintiff here. The sheriff's deed to Hoople, the judgment being regular on its face and reciting jurisdiction, imported a conveyance of the entire fee of the premises in question, free and discharged from all right, claim, lien, interest, estate, and equity of redemption of all parties to the foreclosure action, and the purchaser therefore had the right so to assume upon entering into possession of the premises so conveyed, for such is the effect of a foreclosure deed, where the court has jurisdiction of the subject-matter and of all the parties in interest. In that event the foreclosure relates back to the giving of the mortgage security, and the entire estate of the mortgagor and mortgagee at that time vests in the purchaser, as if the equity of redemption had been foreclosed. Code Civ. Proc. § 1632; Rector, etc., v. Mack, 93 N. Y. 488, 492, 45 Am. Rep. 260; People v. Morgan, 85 App. Div. 292, 294, 83 N. Y. Supp. 86; Caccia v. Brooklyn U. El. R. Co., 98 App. Div. 294, 297, 90 N. Y. Supp. 582. The fact that Benjamin Shevill joined with his wife in executing the mortgage referred to, and which covered her separate estate only, is of no moment here, and does not militate against plaintiff's claim. He then had no interest or estate therein, and he was an unnecessary party to the mortgage (Trustees of Jones Fund v. Roth, 18 Wkly. Dig. 459; Wiltsie on Mort. Foreclosures, § 140; Albany Co. Sav. Bank v. McCarty, 149 N. Y. 71, 85, 43 N. E. 427), for, as said by Judge Vann in the case last cited:

"A husband's right by the curtesy initiate consists simply of a status, which is never a vested right, and is not separately alienable during the coverture. While merely initiate, it is not an estate, but a simple possibility or expectancy like that of an heir apparent. Either may be destroyed at will by the owner of the fee. As it is not coupled with any interest in the property, it cannot be made the subject of a mortgage or transfer."

The purpose and effect of the foreclosure action was to conclude all the parties to the record of whom the court had jurisdiction, and to bind them by the judgment therein, and the object of joining the curtesy tenant as a party defendant was to bar his curtesy estate in the equity of redemption or to give him an opportunity to come in before the foreclosure and sale and redeem the estate from the mortgage lien and thus prevent the sale. The curtesy tenant had the right to redeem from the mortgage lien and thereupon to continue in possession perforce of his right by the curtesy. He also had the opportunity, since he was regularly served with summons and complaint; but he defaulted, whereupon judgment followed, decreeing, in accordance with the prayer of the complaint, that he, with the other defendants, be forever barred and foreclosed of all "right, claim, lien, title, interest, and equity of redemption in said mortgaged premises," and, the sale being had and consummated, "his equity of redemption in said mortgaged premises" was gone, it was foreclosed and forever extinguished and cut off (Tuthill v. Tracy, 31 N. Y. 157, 162; Barnard v. Jersey, 39 Misc. Rep. 212, 213, 79 N. Y. Supp. 380) "beyond the possibility of recall" (2 Bk. Comm. 159; Ansonia Bank's Appeal, 58 Conn. 257, 260, 18 Atl. 1030, 20 Atl. 394), and the mortgage so foreclosed merged in the judgment.

Likewise the curtesy estate, which was concededly subordinate to the mortgage lien, and which existed in and attached to the equity of redemption only, was also extinguished and at an end, for by the judgment, as we have seen, each of the parties of whom the court had jurisdiction was "forever barred and foreclosed," i. e., shut out and excluded (Cent. Dict.; Encyc. Dict.) from "all right, claim, title, interest in said mortgaged premises," language clearly comprehending an estate or a right by the curtesy, and the purchaser was thereupon vested as against the curtesy tenant and all other parties to that action, except the plaintiff here, with "the same estate, only, that would have vested in the mortgagee, if the equity of redemption had been forclosed." Code, § 1632. Therefore it follows that the judgment and the sheriff's deed created "an entire bar" against the curtesy tenant.

Fogal v. Pirro, 17 Abb. Prac. 113, 23 N. Y. Super. Ct. 110, and Randall v. Raab, 2 Abb. Prac. 307, cited by plaintiff's counsel, have no application here, since in those cases the foreclosure and sale related to the curtesy estate only; the curtesy tenant being the sole defendant.

Plaintiff knew in June, 1886, when the summons and complaint were delivered to her by Gaillard, the purpose of the Hoople action and of her interest in the property, for on the trial here she testified: That when the papers were handed to her she read them over and knew that it was a complaint for the foreclosure of that mortgage; that she conversed with her husband (Weifenbach) about them, and he advised her that as she was under 21 years of age, and lived out of New York state, he would have to take care of it for her. She also testified that she was fully apprised that the property was owned by her brothers and herself, but that she had made no inquiry as to the house until about three years ago. During all this time Hoople or the defendant Seaman was in open and notorious possession of said prem-

ises, Hoople under the foreclosure conveyance, and Seaman as Hoople's grantee. Hoople took possession under the sheriff's deed, claiming as purchaser and owner of the entire fee, and so held possession thereof (Miner v. Beekman, 50 N. Y. 337, 344) until his conveyance to Seaman, who then took and still continues that possession, and I agree with the learned counsel for the plaintiff that Hoople did not enter into such possession as mortgagee or at any time hold the same as mortgagee in possession. Nor was Hoople's possession that of a trespasser, since he went into possession with color of title, the sheriff's deed, and thus was within his right.

Upon the facts in this case there is no merit in plaintiff's contention that, until the death of her father, the curtesy tenant, in 1891, she was not entitled to possession or to maintain this action. It is undoubtedly true that, until a precedent life estate is terminated, the remainderman has no right to possession, and likewise, until such termination, there can be no adverse possession; but here the curtesy estate was extinguished when the equity of redemption was cut off and foreclosed by the sale under the Hoople judgment. While the purchaser here might have availed himself, under the doctrine of equitable subrogation, of the right to succeed to the possession of the life tenant, still there is no proof that he did so. To be availed of, the right to that equity must be asserted. It may be waived, either expressly or by implication (People v. Porter, 90 Hun, 401, 403, 35 N. Y. Supp. 811; 27 Am. & Eng. Enc. 270); but, if asserted, that involves an affirmative act. It depends solely upon the volition of him who has the right to invoke its beneficial aid; but he cannot be compelled to avail himself of that equity. I know of no law which compels a person in invitum to assert any claim or right to property or in relation thereto, even when called upon so to do, and notwithstanding that it may be beneficial to the property rights of that person, and there is no legal presumption that Hoople was in possession as equitably succeeding to the possession of said curtesy tenant, or that he would have asserted the right of subrogation if plaintiff had made demand or brought action during her father's lifetime.

As against the plaintiff here, Hoople's entry was adverse and hostile to any claim or estate she had, as likewise has been the subsequent possession of Hoople and of his grantee, Seaman, which possession has been continuous, actual, visible, notorious, and exclusive, meanwhile plaintiff making no inquiry as to the property or her rights therein until about three years ago. Nor does it appear that prior to the commencement of this action, viz., July 17, 1907, she ever made any claim or took any action to establish her rights in said property, or to recover the same or possession thereof, and her gross laches is unexplained; no effort being made to excuse the same. It must be remembered that from the time of the service she know of the foreclosure action, its pendency and purpose, and since 1889 has resided for some part of the time in Brooklyn, while prior to 1889 she lived in Jersey City, only a short journey from the premises in question, and did nothing by way of asserting her interest and estate therein, though in 1886 she knew that the property belonged to her brothers and herself and that she had not been properly served with process in the

foreclosure action. She reached her majority on August 13, 1886, and for nearly 21 years thereafter she did nothing in reference to the matters here in question, nothing until the commencement of this action on July 17, 1907. While there is no equitable estoppel obtainable against the plaintiff, nevertheless her laches should not and cannot be condoned to the manifest injury of innocent parties. The running of the statute of limitations cannot be deferred or suspended because of the mere possibility of the assertion of a right to the benefits of the doctrine of an equitable subrogation, since it must be made clear that that equity has been invoked and availed of as against the remainderman.

Consequently, upon the facts in this case, the conclusion is that Hoople and his grantee had held possession of the premises in question adversely and in hostility to plaintiff's title, interest, and estate for more than 20 years prior to the commencement of this action, and, also, that plaintiff is barred by the statute of limitations (Code Civ. Proc. § 365); her right of action having accrued in September, 1886, she then being of adult age, and her father's curtesy estate having terminated upon the sale and the sheriff's conveyance of said premises pursuant to the Hoople foreclosure judgment. The foregoing also applies with equal force to the defendant Benjamin J. Oric Shevill, in addition to what has heretofore been said as to his status here.

Judgment for the defendants Seaman and Kroos, with costs.