THE ANSONIA NATIONAL BANK'S APPEAL FROM COMMISSIONERS.

New Haven & Fairfield Cos., Oct. T., 1889. ANDREWS, C. J., CARPENTER, LOOMIS, PRENTICE and J. M. HALL, Js.

The statute (Gen. Statutes, § 3010), which provides that "the foreclosure of a mortgage shall be a bar to any further action upon the mortgage debt, note or obligation, unless the person or persons who are liable for the payment thereof are made parties to such foreclosure," applies to mortgages of personal property as well as of real estate, and to proceedings for the sale of such personal property under § 3016.

[Argued October 23d—decided December 30th, 1889.]

APPEAL from the doings of commissioners on the insolvent estate of Frederick Boulton, in disallowing a claim of the appellant presented against the estate; taken to the Superior Court in New Haven County, and heard before *Fenn, J.*, upon an agreed statement of the facts. Judgment was rendered for the appellees and an appeal to this court taken by the original appellant. The case is fully stated in the opinion.

*E. B. Gager*, for the appellant.

*W. S. Downs*, for the appellees.

ANDREWS, C. J. This case depends upon the construction of section 3010 of the General Statutes, which is:— " The foreclosure of a mortgage shall be a bar to any further

action upon the mortgage debt, note or obligation, unless the person or persons who are liable for the payment thereof are made parties to such foreclosure." If this statute applies to the mortgage of personal property in the same way that it applies to a mortgage of real estate, then there is no error in the judgment of the Superior Court; otherwise there is error.

At page 440 of the second volume of Swift's System the law is stated to be, that if the mortgagee forecloses the right of redemption he takes the thing mortgaged out of the nature of a pledge and appropriates it in payment, and it will discharge the bond or note. In *The Derby Bank* v. *Landon*, 3 Conn., 62, Judge HOSMER, in giving the opinion, said :— " In this state it has long been established law that a foreclosure and consequent possession is in the nature of a satisfaction of the debt secured by the mortgage. It is deemed an appropriation of the thing pledged in payment of the demand for which it was security." This decision was approved in *Swift* v. *Edson*, 5 Conn., 535, and in *Bassett* v. *Mason*, 18 Conn., 136. " If the mortgagee proceeds by bill for the technical foreclosure, the estate becomes his property in the character of a purchaser, and the general understanding formerly was that by taking the pledge to himself he took it in satisfaction of the debt." 4 Kent's Com., 182.

This rule of the law probably proceeded upon the known disposition of creditors to exact full security for their debts. In the ordinary experience of mankind security of greater value than the debt was required before credit would be extended ; and it was only just that when a creditor took possession of the property pledged he should be deemed to have taken it in full discharge of the demand for which it was security. But as in some cases the property pledged might be of less value than the debt, the legislature in 1833 enacted " that the foreclosure of any mortgage shall not preclude the mortgage creditor from recovering in any appropriate action so much of the claim or demand to secure which said mortgage was given as the property mortgaged shall be insufficient in value, estimated at the expiration of the time

limited for redemption, to satisfy;" and "that bringing an action by such creditor upon his claim or demand of the foreclosure obtained, shall not open the foreclosure, but the value of the property mortgaged, at the expiration of the time limited for redemption, shall be ascertained by the court before which such action is pending; and the plaintiff in such action shall recover only so much as his claim or demand exceeds in amount the value of said mortgaged property." Public Acts of 1833, chap. 18.

Under this law great hardship and injustice was very likely to be inflicted upon persons remotely liable on the mortgage debt, who, without knowledge that the property had been foreclosed, might be sued long after the foreclosure, and when the value of the property mortgaged was difficult to be proved; and sometimes when subsequent grantees of the property had promised to assume and pay the mortgage debt.

The section 3010 of the statutes, which is the one above quoted, was passed in 1878. This was plainly intended by the legislature to be a return to the original law of this state, namely, that the foreclosure of a mortgage should operate as a payment of the debt to secure which the mortgage was given, unless the creditor chose to make all the persons liable for the payment of such debt parties to the foreclosure proceedings. As to all such persons not made parties the act of 1878 is a repeal of the act of 1833 and a re-enactment of the prior law. This court in *Windham County Nat. Bank* v. *Himes*, 55 Conn., 435, contrasting these two statutes said:—" The statute of 1878 provides that no suit shall be brought against any person who was not made a party to the foreclosure suit. The former statute allowed such a suit, and of course to that extent is repealed." See also *Curtiss* v. *Hazen*, 56 Conn., 146.

These statutes now afford justice to every one. If the mortgagee is not willing to take the property mortgaged as full payment for his debt he has only to make all the persons to whom he may wish to resort for further payment parties to his foreclosure suit. If he neglects to do this it does him no harm to assume that the security is equal in value to the

amount of the debt. And on the other hand, the persons liable to pay the mortgage debt being cited in have full opportunity to protect their own interests.

A second section in the act of 1878 provided for an appraisal of the mortgaged property within ten days after the time limited for redemption. From this the appellant has argued that the sole intent of the legislature was to establish a speedy and certain method to ascertain the value of the property in order to fix the deficiency, if any, which must be paid by the parties personally liable on the mortgage debt. But the argument wholly overlooks the first section, which has application to persons not made parties to the foreclosure suit and as to whom there is no occasion to ascertain the value of the mortgaged property. As to these persons there is no insufficiency: for as to them the debt is paid in full. It is only the persons who are made parties to the suit to whom the second section applies; and as to them the pro· visions of the act of 1833 are not repealed. *Windham Co Nat. Bank* v. *Himes*, 55 Conn., 435.

Another argument urged by the appellant is, that a decree for the sale of mortgaged property is not a foreclosure in the sense in which that word is used in the quoted section of the statutes. A foreclosure is any proceeding by which the mortgagor's equity of redemption in the property is cut off beyond possibility of recall. 2 Black. Com., 159; Powell on Mortgages, 1040; *Puffer* v. *Clark*, 7 Allen, 85; Pomeroy's Equity, § 1227; 3 Washburn's Real Prop., 237; Anderson's Dictionary of the Law, and Bouvier's Dictionary, *ad verbum; Goodman* v. *White*, 26 Conn., 322.

The word "foreclosure" in the quoted section is undoubtedly used in the sense of the definition. Any proceeding then which cuts off the mortgagor's equity of redemption in the mortgaged property beyond recall would be a fore· closure in the sense of this statute. That a decree for the sale of mortgaged property, such as was had in this case, does so cut off the mortgagor's equity of redemption in it beyond possibility of recall, is not open to question. Section 3016, of the statutes, under which the sale was decreed,

provides that the property shall be sold free from all subsequent incumbrances.

The only equitable remedies of the mortgagee for enforcing the lien of the mortgage when it has become due, are "strict foreclosure" and "foreclosure by judicial sale"; the latter of which is by far the most common in this country. In a note under page 216, volume second, 4th ed. of Washburn's Real Property, the statutes of all the states respecting the foreclosure of mortgages are collated. There is a similar collection of these statutes in 2 Hilliard on Mortgages, chap. 27, pages 43–87. By a reference to these it appears that in almost all the states foreclosure by a sale is the practice, and the strict foreclosure without any opportunity for a sale of the property, either by the direct decree of the court or upon an execution, is unknown except in two or three of the states. In view of this almost unanimous usage it would seem idle to claim that a decree of sale is not a foreclosure.

It is further argued that the statute in question was not intended to include mortgages of personal property. We cannot assent to this claim. That this statute uses the word "mortgage" in its ordinary meaning cannot be questioned. It intends to speak of a contract by which a debtor, while retaining the possession of his property, conveys the legal title in it to his creditor as security for the debt and conditioned to be void upon payment of the debt. Such a contract is a mortgage. *De Wolf* v. *Sprague Mfg. Co.*, 49 Conn., 319. And it makes no difference whether the property so conveyed is real estate or is personal property. In this state the contract by which personal property is mortgaged is required to be precisely like one by which real estate is mortgaged. Each must be by a deed describing the property conveyed and containing a defeasance, and a mortgage deed of personal property must be executed, acknowledged and recorded in the same way as is the mortgage of real estate. "The natural import of the words of any legislative act according to the common use of them when applied to the subject matter of the act, is to be considered as express

ing the legislative intent." *Opinion of the Justices*, 7 Mass., 523; *Higley* v. *Bunce*, 10 Conn., 441. Nor is there anything in this statute to indicate that the word "foreclosure" is not used in its ordinary meaning. As above shown a foreclosure is that proceeding which cuts off the mortgagor's equity of redemption in the property mortgaged, and obviously is not affected by the kind of property which is the subject of the mortgage. It does not mean one thing when the property mortgaged is real estate and another thing when the property mortgaged is personalty.

In this opinion PRENTICE and J. M. HALL, Js., concurred.

CARPENTER, J., (dissenting.) I cannot concur in the decision in this case. The question is, what is the meaning of the word "foreclosure" in the first section of the act of 1878, (Gen. Statutes, § 3010,) which is as follows:—"The foreclosure of a mortgage shall be a bar to any further action upon the mortgage debt, note or obligation, unless the person or persons who are liable for the payment thereof are made parties to such foreclosure." Does it include or exclude a complaint in equity for a sale of personal property mortgaged? I maintain that it excludes it.

Prior to 1832 a formal mortgage of personal property was practically unknown in this state. Such a conveyance was invalid unless accompanied by possession. As security therefore the inconvenience was so great as to prevent its use except to a limited extent. Other kinds of property, such as bonds, stocks, etc., of which possession could be conveniently delivered, were in use then as now. Then as now such securities were not mortgaged but pledged. Hence we find no statute regulating chattel mortgages until 1832; and few such mortgages, if any, existed. Therefore the word "foreclosure" will be presumed to have had no reference to chattel mortgages. It was in common use, both in our statutes and in our reports, but it referred exclusively to mortgages of real estate. At a time then when there was but one meaning to the word, and that a strict fore-

closure of mortgaged real estate, the legislature passed an act providing that certain kinds of personal property might be mortgaged with the real estate, and the lien thereby created be valid without delivery of possession, and also pro viding that such property might be foreclosed with the real estate. In passing I observe that a foreclosure of personal property as then provided for does not mean a sale, for the law is, and the practice has been, to foreclose the personal property as real estate is foreclosed. By the same act provision was made for mortgaging the same kind of personal property without the real estate and without delivery of possession. In case the mortgagor fails to pay, the remedy prescribed is a bill in equity for a sale. Subsequently other kinds of personal property were brought within the provisions of the act. That act as amended, including the remedy, a special provision, is now in force. Nowhere in the statute is that remedy or the decree of the court called a foreclosure. As to real estate the proceeding is called a foreclosure; as to personal estate alone it is called a bill in equity for a sale, etc.

Prior to 1833 the foreclosure of a mortgage, irrespective of the value of the property, paid the debt. In many in stances that was unjust to the creditor. To remedy that an act was passed that year providing that the foreclosure should not preclude a remedy for the balance of the debt. That statute clearly referred to real estate only; for until 1832 none other was recognized by statute or known in practice as the subject of mortgage. It was a remedial statute, the mischief being that creditors were often wronged; and no such mischief then or ever existed in respect to mortgages of personal property. If there was a mortgage or pledge of that as security, and the thing mortgaged or pledged was converted into money, and was insufficient to pay the debt, it was never held that the balance of the debt was thereby discharged. The proposition then is undeniable that the act of 1833 referred only to mortgages of real estate. That act continued in force until 1878, when the act now under consideration was passed. That act is en

titled, "An act relating to the Foreclosure of Mortgages."
It purports to deal only with the subject matter of the act
of 1833. It clearly was intended to affect that act, and
there is no evidence that it was intended to affect any other
statute or law. It was in effect and substance an act in
addition to and in alteration of the prior act. The word
"foreclosure" having a fixed and definite meaning in the
former act, it should be construed as having the same mean-
ing in the latter, unless a different intention is clearly ex-
pressed.

For nearly sixty years these two classes of mortgages, of
real estate and of personal property, have stood side by side
in our law. The law supplies a distinct and radically differ-
ent remedy for each :—the one, a strict foreclosure, by which
the equitable right of the mortgagor is extinguished, and the
absolute title vested in the mortgagee ; the other, not a fore-
closure in the strict and popular sense, but a decree that the
thing pledged, or mortgaged, be sold, and the avails applied
in payment or part payment of the debt. The latter in the
statute is not called a foreclosure but a decree for a sale.

But it is said that a judicial sale is a foreclosure ; that is,
it extinguishes the right of the mortgagor and appropriates
the security. That is doubtless true, and in a loose sense it
is sometimes called a foreclosure ; but legally in Connecticut
the word is not often used in that sense by the legislature,
the courts, or the profession. A history and review of the
law in this state clearly demonstrates that the legislature did
not use it in that sense in this instance.

But it is said that a mortgage of personal property is
within the spirit and mischief of the act. Is it.? I venture
to affirm that not an instance can be pointed out in which the
sale of mortgaged personal property has been attended with
any such mischievous consequences as have existed in refer-
ence to real estate. The two cases are unlike each other.
While there were many cases of injustice which were de-
signed to be prevented by the act of 1833, and difficulties
existed in the application of that act to remedy which the
act of 1878 was passed, yet no such evils exist or ever have

existed with reference to mortgages of personal property only.

If indorsers, in cases where the maker secures the debt by a mortgage of personal property, need the protection of the statute, they need it also when the security is by way of a pledge. A pledge differs from a mortgage chiefly in this; a pledgee has the possession but not the title, while a mortgagee has the title and not the possession. Both are in a broad sense mortgages. Is it proposed to extend the provisions of the statute by requiring notice to indorsers when it is proposed to appropriate things pledged? It may be so that no great harm will result when it is understood; but it seems to me dangerous for the court to make such law by construction. If there are evils in that direction, let the legislature devise and apply the remedy.

If any part of the act of 1878 applies to mortgages of personal property, all does—the second section as well as the first. Let us test the practical working of the two statutes on the supposition that both apply. A complaint is pending for a sale under the statute of 1832; the court decrees a sale and limits a time within which the debtor may redeem; some party to the suit applies to the court for the appointment of appraisers under the act of 1878, and they are appointed. Now the appraisers have ten days after the expiration of the time limited in which to make the appraisal. That necessarily postpones the sale, and it may be for ten days. Did the legislature contemplate that? But that is a minor matter. We will pass on. An appraisal is made and in due time there is a sale. The property is appraised at a much larger sum than it brings. The statute provides that "such appraisal shall be final and conclusive as to the value of such mortgaged property; and the mortgage creditor in any further action upon the mortgage debt, note or obligation, shall recover only the difference between the value of the mortgaged property as fixed by such appraisal and the amount of his claim." Gen. Statutes, § 3011. The inevitable result is that the creditor must lose the difference between the valuation and the amount realized at the sale,

together with all the expenses of the sale. Did the legislature contemplate that? But more. The mortgagee is compelled to become the purchaser of the property at the appraisal of men, with no power to exercise his own judgment; and what is still worse, if possible, he is not permitted to hold it, and take the chances of effecting a favorable sale, but is compelled by the decree immediately to sell it at auction. Can it be possible that the legislature intended any such absurd and unjust consequences? On the other hand, if the property sells for more than the appraisal, then the mortgagor is the loser and the mortgagee gains. Could that have been intended? Will it be suggested that the valuation as fixed by the sale is the better rule? Then I ask, of what use is the appraisal? And by what authority is the positive provision of the statute disregarded? The suggestion is of itself a confession that the statute has no application. It seems to me impossible to harmonize two such incongruous statutes and make them both apply to the same transaction.

The sole reason for requiring parties who may be liable for the mortgage debt to be made parties to an action for a foreclosure, is that there may be an appraisal of the property, and that they may have an opportunity to appear and be heard when the appraisal is made—that they may not be concluded without a day in court. It is hardly possible to assign any other reason for the existence of the act. No such reason exists, or can exist, in appropriating personal property mortgaged. A singular illustration, and almost a demonstration of the truth of this proposition, exists in this case. The mortgage in question contains a provision that on default the mortgagee may sell the machinery mortgaged without legal proceedings, upon "giving notice of the time and place of such sale by publication for three successive weeks in the Naugatuck Valley Sentinel, a weekly newspaper published in said Derby." A sale under this clause is just as much a foreclosure as a sale pursuant to a decree of court. There is precisely the same reason for notice to the indorsers and an appraisal in the one case as in

the other. If, not being made a party, the indorser is discharged in the one case, he is in the other. The logic of the decision leads inevitably to this result—that in all cases where personal property mortgaged or pledged is sold and the avails applied on the mortgage debt, the indorser, guarantor, or other surety, is thereby discharged unless he is made a party to the proceeding. Is this court prepared to announce that doctrine? The business community will be surprised and alarmed at the announcement. It is not safe to overturn and unsettle well-established and well-known principles. A radical change by the court in simple elementary law is highly objectionable.

Again. Boulton and Hill were the indorsers. It is found that "said Hill and Boulton were the chief stockholders in said company, and indorsed said notes for the accommodation of said company." Hill was the treasurer and signed the mortgage deed as such for the company. Boulton, no less than Hill, probably had a voice in fixing the terms of the mortgage. They were satisfied to have the property sold without notice to them individually, and for the company actually agreed that it might be sold without other notice than the publication stipulated for. They correctly assumed that with that they would have all the notice they desired. Upon what principle can the court hold that they were entitled to other and different notice?

It may be said that the property was not sold under that stipulation, but by order of court. True; and let us consider the case for a moment in that aspect. The statutory remedy required notice to the company that it might interpose any proper defense and be heard as to the time of redemption and sale. No appraisal of the property was appropriate or necessary and none was contemplated. Hence for that purpose there was no occasion to make the indorsers parties. By implication they had waived personal notice in case of a sale without legal process. Why should they insist upon it in case of legal process? The sale was strictly analogous to a sale on an execution. The indorsers have precisely the same interest in having the property

bring its full value in the one case that they have in the other; yet it has never been considered that sureties have such an interest in the sale of the property of the principal that they were entitled to notice of the time and place of sale; much less that they should be made parties. But suppose it be admitted that they had such an interest as that they were fairly entitled to notice, and as that they might have been made parties; then, I reply, assuming as I may that the statute has no application, that under our practice they had a right to come into court and be made parties. Not doing so they waived it. They cannot plead ignorance, for the case expressly states that "both had full knowledge of said suit and of the proceedings thereunder." What more could they have had? Certainly there is nothing lacking but a mere matter of form. The substance of all that is or can be contended for they had.

The decision in this case then, discharging the indorsers from liability, rests either upon a misapplication of the statute, or upon grounds of the merest technicality. In either case it seems to me to be clearly wrong.

In this opinion LOOMIS, J., concurred.

Hartford Dist., Oct. T., 1889. ANDREWS, C. J., CARPENTER, PARDEE, LOOMIS and SEYMOUR, Js.

The defendant, who had been domiciled in *H* and had paid her taxes there, claimed to have removed to *S*, and to have acquired a domicil there. Held that it was necessary for her to prove a residence in *S* so permanent as to exclude the existence of an intention to make a domicil elsewhere, as well as of an intention to return to *H*.

It being admitted that the defendant had gone to *S* to reside either temporarily or permanently, the question became wholly one of intent: was it her intent to change her domicil from *H*?

To prove the character of her residence in *S* the defendant offered a witness who testified that the defendant lived in the house of the witness in