******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JP MORGAN CHASE BANK, N.A. *v.* WINTHROP
PROPERTIES, LLC, ET AL.
(SC 19048)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Vertefeuille, Js.

*Argued February 11—officially released July 29, 2014*

*Walter M. Spader, Jr.*, for the appellant (substitute
plaintiff).

*Hugh D. Hughes*, with whom, on the brief, were *William F. Gallagher*, *David McCarry* and *David Pinciaro*,
for the appellees (defendant Zeev Zuckerman et al.).

*Opinion*

McDONALD, J. The sole issue in this certified appeal is whether General Statutes § 49-1,[1] under which the foreclosure of a mortgage is a bar to further action against persons liable for the payment of the mortgage debt, note or obligation who are, or may be, made parties to the foreclosure, applies to guarantors of the mortgage note. The mortgagee plaintiff, 1533 Chapel, LLC,[2] appeals from the judgment of the Appellate Court, which reversed the judgment of the trial court in favor of the plaintiff on its claim against the defendant guarantors of the mortgage debt, Zeev Zuckerman and Leon Szusterman (guarantors). The plaintiff claims that the Appellate Court improperly concluded that, following the entry of the judgment of strict foreclosure and lapse of the period provided for filing a motion for a deficiency judgment under General Statutes § 49-14, § 49-1 barred the plaintiff from obtaining any additional remedy from the guarantors. We conclude that § 49-1 had no effect on the plaintiff's ability to recover the remaining unpaid debt from the guarantors because, irrespective of the fact that the plaintiff advanced claims to foreclose the mortgage and to enforce the guarantee in a single cause of action, the guarantors were not parties to the foreclosure claim because their liability arises separately under their guarantee. Therefore, we reverse the judgment of the Appellate Court.

The Appellate Court's opinion set forth the following undisputed facts and procedural history. "In 2005, the [named defendant, Winthrop Properties, LLC, (defendant)] borrowed $1,012,500 from Washington Mutual Bank. In return for the loan, the defendant executed a promissory note and a mortgage on property in New Haven known as 1533 Chapel Street, also known as 1531 Chapel Street. As a further condition to obtaining the loan, the guarantors were required to execute a personal guarantee in which they assumed joint and several liability for repayment of the note. The defendant later defaulted on the note by failing to make the required monthly mortgage payments. JP Morgan Chase Bank, N.A., as the successor in interest to Washington Mutual Bank, filed the present action. [The named plaintiff, JP Morgan Chase Bank, N.A., assigned its interest in the subject note and mortgage to the plaintiff.]

"Count one of the operative complaint sought to foreclose on the mortgage securing the note. Count two sought to enforce the guarantee. The ad damnum clause indicated that the plaintiff sought, inter alia, a judgment of strict foreclosure . . . a deficiency judgment against the makers of or obligors on the note [and money damages against the makers of or obligors on the note]. Shortly after commencing the action, the plaintiff filed a motion for a judgment of strict foreclosure.

"The plaintiff filed a motion for summary judgment

as to liability only on February 17, 2010. The plaintiff directed the motion to both counts of the complaint, arguing that there were no genuine issues of material fact concerning liability and that it was entitled to judgment as a matter of law. On May 20, 2010, the court issued an order granting summary judgment against the defendant and the guarantors as to liability only. Subsequently, on June 28, 2010, the court granted the plaintiff's motion for a judgment of strict foreclosure. In rendering the judgment of strict foreclosure, the court found that the fair market value of the subject property was $325,000 and that the debt was $1,159,014.55, plus attorney's fees. The court set the defendant's law day for August 23, 2010. The defendant did not appeal the foreclosure judgment, nor did it attempt to redeem the property prior to the passing of its law day. Accordingly, on August 24, 2010, in the absence of redemption by the defendant, title to the subject property vested in the plaintiff.

"On October 14, 2010, more than thirty days after the time in which to redeem the subject property had expired, the plaintiff filed a motion for a deficiency judgment. Recognizing that the motion was not timely filed, the plaintiff never sought adjudication of the motion. Instead, on January 14, 2011, in reliance on the fact that summary judgment as to liability had been granted against the guarantors on count two of the complaint, the plaintiff filed a request for a hearing in damages on that count. On March 4, 2011, the guarantors filed an objection to the request for a hearing in damages. They argued that, because the plaintiff had not filed a motion for a deficiency judgment within thirty days of the running of the law days as required by § 49-14, the plaintiff was barred by § 49-1 from taking any further action to collect money damages from the guarantors. The plaintiff filed a reply to the objection. The guarantors also filed a notice of defense in which they raised the same argument made in their objection to the request for a hearing in damages. On March 22, 2011, the plaintiff filed a motion to strike the guarantors' notice of defense,[3] arguing that [t]he purported defense is legally insufficient for it fails to defeat the plaintiff's cause of action on count two of the complaint, as a guaranty is a separate and distinct contractual instrument upon which the plaintiff can proceed to judgment. The guarantors filed an opposition to the motion to strike.

"The court [Zemetis, J.] granted the motion to strike on May 12, 2011, stating: The court adopts the analysis of Connecticut Bank & Trust Co. v. Boston Post Ltd. Partnership, [Superior Court, judicial district of New London, Docket No. 515294, (December 12, 1990) (3 Conn. L. Rptr. 56)] in finding count two, the guaranty count, a separate, independent and distinct cause of action from that stated in count one. The failure of the plaintiff to timely seek a deficiency judgment on count

one is of no moment to the cause of action stated in count two. The motion to strike the defense raised by a failure to secure a deficiency judgment on count one is therefore granted. On August 24, 2011, the court, *Hon. Howard F. Zoarski*, judge trial referee, following a hearing in damages, rendered . . . judgment in the amount of $1,295,888.45 against the guarantors and in favor of the plaintiff." (Footnotes altered; internal quotation marks omitted.) *JP Morgan Chase Bank, N.A.* v. *Winthrop Properties, LLC*, 137 Conn. App. 680, 683–85, 50 A.3d 328 (2012).

On appeal to the Appellate Court, the guarantors claimed that the trial court improperly had granted the plaintiff's motion to strike their notice of defense because §§ 49-1 and 49-14 indicate that a mortgagee who fails to file a timely motion for a deficiency judgment following the expiration of the time for redemption cannot recover additional damages from a guarantor based on the terms of a guarantee. Id., 685–86. The Appellate Court agreed, reversing the trial court's "deficiency judgment" and remanding the case with direction to vacate the award of damages. Id., 690. The court first determined that the general bar to further recovery following foreclosure of a mortgage under § 49-1 applied to the second count of the complaint seeking recovery under the guarantee. Id., 689. Specifically, the court noted that it was undisputed that the guarantors were parties to the foreclosure action, and therefore focused solely on whether the action against the guarantors was "further action upon the mortgage debt, note or obligation" against the person or persons who are "liable for the payment thereof" under § 49-1. (Internal quotation marks omitted.) Id. The court interpreted " 'obligation' " to unambiguously encompass an obligation to repay a mortgage debt incurred under a guarantee. Id. The court next determined that, because the plaintiff had been made partially whole by the judgment of strict foreclosure in the first count of the complaint, the only measure of damages available on the second count would have been an amount equal to a deficiency judgment. Id., 689–90. Although § 49-14 provides a limited exception to the bar under § 49-1 for a deficiency judgment, the Appellate Court concluded that the plaintiff had filed an untimely motion under § 49-14 and had in fact abandoned an adjudication of that motion. Id., 690. The Appellate Court concluded, therefore, that the trial court improperly had granted the plaintiff's motion to strike the guarantors' special defense. Id. This certified appeal followed.

On appeal, the plaintiff claims that a guarantee is a legal instrument that is separate and distinct from the contract between the mortgagor and mortgagee, and, as such, § 49-1 should not extinguish the mortgagee's right to proceed against a guarantor if the mortgagee does not pursue a deficiency judgment against the mortgagor. In response, the guarantors argue that §§ 49-1

and 49-14 unambiguously provide that, upon the foreclosure of a mortgage, the only means of satisfying the mortgage debt when the security is inadequate to make the mortgagee whole is a deficiency judgment. Because the plaintiff sought relief against the guarantors in a manner that was not in conformance with that strictly construed statutory procedure, the guarantors contend that the Appellate Court properly reversed the judgment of damages against them. We agree with the plaintiff.

"A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. As a result, our review of the court's ruling is plenary." (Internal quotation marks omitted.) *Jarmie* v. *Troncale*, 306 Conn. 578, 583, 50 A.3d 802 (2012). Similarly, the scope of §§ 49-1 and 49-14 is an issue of statutory interpretation over which we exercise plenary review. *Lopa* v. *Brinker International, Inc.*, 296 Conn. 426, 429, 994 A.2d 1265 (2010); see id., 430 (setting forth well settled rules of statutory construction).

We begin with the statutes at issue. Under § 49-1, "[t]he foreclosure of a mortgage is a bar to any further action upon the mortgage debt, note or obligation against the person or persons who are liable for the payment thereof who are made parties to the foreclosure and also against any person or persons upon whom service of process to constitute an action in personam could have been made within this state at the commencement of the foreclosure . . . ." Section 49-14 (a) furnishes a limited exception to this rule for strict foreclosures,[4] providing that "[a]t any time within thirty days after the time limited for redemption has expired, any party to a mortgage foreclosure may file a motion seeking a deficiency judgment." Therefore, once a mortgagee strictly forecloses on a mortgage and obtains title to the property following the running of the law days, § 49-1 extinguishes all rights of the mortgagee with respect to the "mortgage debt, note or obligation" against persons who are or could have been made parties to the foreclosure, except as provided in § 49-14. See *First Bank* v. *Simpson*, 199 Conn. 368, 370–72, 507 A.2d 997 (1986).

The Appellate Court rested its conclusion that guarantors fall within the scope of § 49-1 on a broad construction of the term "obligation," as used within the phrase "mortgage debt, note or obligation." Such a conclusion is not compelled by the plain meaning of the term. We note that neither § 49-1 nor any other provision in chapter 846 of the General Statutes pertaining to mortgages defines "obligation." When read in isolation, we agree that the term could be interpreted to encompass a guarantee, as it is indeed an obligation to pay the underlying debt. Conversely, if the term "mortgage" modifies not only the term "debt," but also the terms "note" and "obligation," the latter could refer to obliga-

tions that are *secured by a mortgage* but not secondary obligations that provide further security, such as a guarantee that obligates payment of a promissory note secured by a mortgage.[5] Support for this narrower interpretation can be found in other provisions in chapter 846, which address an obligation other than a promissory note that is secured by a mortgage. See General Statutes § 49-4c ("[a]ny mortgage entered into . . . between a private power producer . . . and an electric company . . . shall be valid to secure all obligations then existing or thereafter arising of the mortgagor to the mortgagee under an electricity purchase agreement"); General Statutes § 49-9 (a) ("[a] mortgage . . . may be released by an instrument in writing . . . setting forth that the mortgage . . . is discharged or that the indebtedness or other obligation secured thereby has been satisfied"); General Statutes § 49-27 ("[i]f any part of the debt or obligation secured by the mortgage or lien foreclosed . . . was not payable at the date of the judgment of foreclosure"); see also *State* v. *Pommer*, 110 Conn. App. 608, 616, 955 A.2d 637 ("[t]he rule of construction that words in a statute must be construed according to their plain and ordinary meaning [is informed by] the doctrine of [in pari] materia, under which statutes relating to the same subject matter may be looked to for guidance in reaching an understanding of the meaning of a statutory term" [internal quotation marks omitted]), cert. denied, 289 Conn. 951, 961 A.2d 418 (2008). Therefore, although it appears to us more consistent with the mortgage chapter to construe the term obligation more narrowly than did the Appellate Court, we nevertheless conclude that the term is ambiguous when read in isolation.

When the term obligation is read in context with the entire statute and established principles of common law, however, it is clear that it does not encompass the guarantee at issue in the present case. Section 49-1 indicates that the bar to further action applies only against those persons "who are [or could have been] made parties to the foreclosure . . . ." Although the Appellate Court assumed that the guarantors were parties to the foreclosure in the present case, presumably because their names were recited in both the foreclosure count and in the count to enforce the guarantee, for the reasons that follow, we conclude otherwise. Specifically, we conclude that guarantors are not obligated on a mortgage because they have a separate and distinct contractual obligation from the promissory note and mortgage under their guarantee. As such, they are not "parties to the foreclosure," irrespective of whether the mortgagee pursues a claim against the guarantors in the same cause of action in which it pursues foreclosure of the mortgage.

We begin with certain fundamental propositions. Upon a mortgagor's default on an underlying obligation, the mortgagee is entitled to pursue various remedies

against the mortgagor including its remedy at law for the amount due on the note, its remedy in equity to foreclose on the mortgage, or both remedies in one consolidated cause of action. See *New Milford Savings Bank* v. *Jajer*, 244 Conn. 251, 266, 708 A.2d 1378 (1998); *Hartford National Bank & Trust Co.* v. *Kotkin*, 185 Conn. 579, 581, 441 A.2d 593 (1981). To understand who are proper parties when a mortgagee pursues the remedy of foreclosure, one must recognize that "Connecticut follows the title theory of mortgages, which provides that on the execution of a mortgage on real property, the mortgagee holds legal title and the mortgagor holds equitable title to the property. . . . As the holder of equitable title, also called the equity of redemption, the mortgagor [or a subsequent grantee] has the right to redeem the legal title on the performance of certain conditions contained within the mortgage instrument." (Internal quotation marks omitted.) *Ocwen Federal Bank, FSB* v. *Charles*, 95 Conn. App. 315, 322–23, 898 A.2d 197, cert. denied, 279 Conn. 909, 902 A.2d 1069 (2006). The purpose of the foreclosure is to extinguish the mortgagor's equitable right of redemption that he retained when he granted legal title to his property to the mortgagee following the execution of the mortgage. See *New Milford Savings Bank* v. *Jajer*, supra, 256 n.11; *Ansonia National Bank's Appeal from Commissioners*, 58 Conn. 257, 259, 18 A. 1030 (1890). The mortgagee's title does not become absolute, however, until all eligible parties have failed to exercise their rights to redeem the property. *New Milford Savings Bank* v. *Jajer*, supra, 256 n.11. Eligible parties include not only the mortgagor or the mortgagor's successor, but also subsequent encumbrancers on the property. See General Statutes § 49-19 (providing for redemption by subsequent encumbrancers following judgment of strict foreclosure if encumbrancer makes payment of debt and costs, subject to such unpaid encumbrancers, if any, as precede him); General Statutes § 49-20 (providing for redemption by subsequent encumbrancers who hold interest on only part of mortgaged property). Therefore, "[a]ny proceeding . . . which cuts off the mortgagor's equity of redemption in the mortgaged property beyond recall would be a foreclosure in the sense of [§ 49-1]." *Ansonia National Bank's Appeal from Commissioners*, supra, 260; see also *New Milford Savings Bank* v. *Jajer*, supra, 256 n.11 (noting mortgagee's title does not become absolute until all eligible parties have failed to exercise their rights to redeem property).

Unlike the equitable nature and aims of foreclosure, a claim on the note at law is grounded in contract, and is enforceable as between the parties to that contract— the debtor and the creditor, as well as persons who succeed to those obligations or rights by transfer or assignment. See *New Milford Savings Bank* v. *Jajer*, supra, 244 Conn. 266–67 (noting enforcement of note

is remedy at law); *Ankerman* v. *Mancuso*, 271 Conn. 772, 777, 860 A.2d 244 (2004) ("[a] promissory note is simply a written contract for the payment of money" [internal quotation marks omitted]). Thus, any deficiency judgment sought in connection with the foreclosure arises from the contractual relationship between the parties to the promissory note. See *Eichman* v. *J & J Building Co.*, 216 Conn. 443, 453, 582 A.2d 182 (1990) ("deficiency judgment hearings more closely resemble suits for collection"); *Federal Deposit Ins. Corp.* v. *Voll*, 38 Conn. App. 198, 207, 660 A.2d 358 (noting while deficiency judgments are part of foreclosure, "the deficiency judgment is the functional equivalent of a suit upon the note" [internal quotation marks omitted]), cert. denied, 235 Conn. 903, 665 A.2d 901 (1995).

When payment of a promissory note secured by a mortgage is further protected by a separate guarantee, in addition to the aforementioned potential remedies against the mortgagor, the mortgagee may pursue a claim against the guarantors to recover any of the unpaid debt of the mortgagor. See *Bank of Boston Connecticut* v. *Schlesinger*, 220 Conn. 152, 157–58, 595 A.2d 872 (1991). A guarantee is a promise to answer for another's debt, default or failure to perform a contractual obligation. See *Superior Wire & Paper Products, Ltd.* v. *Talcott Tool & Machine, Inc.*, 184 Conn. 10, 20–21 n.8, 441 A.2d 43 (1981); *Wolthausen* v. *Trimpert*, 93 Conn. 260, 265, 105 A. 687 (1919); 1 Restatement (Second), Contracts § 88 (1981). As a contractual obligation separate from the contractual agreement between the lender and borrower, a guarantee imports the existence of two different obligations: the obligation of the borrower and the obligation of the guarantor. See *Regency Savings Bank* v. *Westmark Partners*, 59 Conn. App. 160, 164, 756 A.2d 299 (2000); 38 Am. Jur. 2d 950, Guaranty § 4 (2010).

Although there is little Connecticut appellate law specifically addressing guarantee agreements in the context of mortgages, this court has recognized the general principle that a guarantee agreement is a separate and distinct obligation from that of the note or other obligation. *Carpenter* v. *Thompson*, 66 Conn. 457, 463–64, 34 A. 105 (1895) ("[Guarantees] are . . . distinct and essentially different contracts; they are between different parties, they may be executed at different times and by separate instruments, and the nature of the promises and the liability of the promisors differ substantially . . . . The contract of the guarantor is his own separate undertaking in which the principal does not join." [Citations omitted; internal quotation marks omitted.]); see *Bristol Bank & Trust Co.* v. *Broderick*, 122 Conn. 310, 313–14, 189 A. 455 (1937) (implicitly recognizing separate and distinct liability of guarantor).

In light of this principle, it is almost universally recognized in other jurisdictions that a guarantor's liability

does not arise from the debt or other obligation secured by the mortgage; rather, it flows from the separate and distinct obligation incurred under the guarantee contract. See *Mariners Savings & Loan Assn.* v. *Neil*, 22 Cal. App. 3d 232, 235, 99 Cal. Rptr. 238 (1971) (stating when defendant husband executed guarantee as further security to his wife's execution of promissory note secured by mortgage on her separate property, that no obligations were thereby imposed on defendant because "[his] obligation on the contract of guarantee was separate and distinct from the primary obligation of his wife"); *SKW Real Estate Ltd. Partnership* v. *Gold*, 428 Mass. 520, 523, 702 N.E.2d 1178 (1998) ("liability of a guarantor does not flow from an obligation secured by a mortgage of real estate but is independent of that obligation" [internal quotation marks omitted]); *Bank Mutual* v. *S.J. Boyer Construction, Inc.*, 326 Wis. 2d 521, 553, 785 N.W.2d 462 (2010) ("guarantor [is not] liable for the debt secured by the mortgage; rather, the guarantor is liable for what he or she agreed to in the guaranty"); see also Restatement (Third), Suretyship and Guaranty § 15, comment (c), pp. 72–73 (1996) ("the secondary obligor's duty is to satisfy the obligee's claim with respect to the underlying obligation, rather than to fulfill the principal obligor's personal obligation").

Due to the separate and distinct liability of a guarantor, courts generally have recognized that, in the absence of a statute expressly pertaining to guarantors, such secondary obligors are not proper parties to a claim seeking the foreclosure of a mortgage and their obligations are not limited by the extinguishment of the mortgagor's rights and obligations. See, e.g., *Hamill* v. *McCalla*, 228 Ala. 281, 284, 153 So. 412 (1934) ("[i]n the absence of a joint liability for the debt, and of any interest in the property, or the right which would affect the extinguishment of the equity of redemption, or by which the ownership of the debt or property passed, [a guarantor] is not a proper party [to a foreclosure], and not subject to a statutory deficiency decree"); *Northern Trust Co.* v. *VIII South Michigan Associates*, 276 Ill. App. 3d 355, 369, 657 N.E.2d 1095 (1995) (recognizing that although "[a]n action against a guarantor of a note is separate from the remedy of foreclosure and sale," statute expressly provides that guarantors may be permissible parties to foreclosure "provided that in a foreclosure any such guarantor also may be joined as a party in a separate count in an action on such guarantor's guaranty"); *Bank Mutual* v. *S.J. Boyer Construction, Inc.*, supra, 326 Wis. 2d 553 (holding statute permitting plaintiff seeking foreclosure to obtain deficiency judgment within same proceeding does not apply to guarantors because they are not "personally liable for the debt secured by the mortgage" as required by statute [internal quotation marks omitted]); see also *Long* v. *NCNB-Texas National Bank*, 882 S.W.2d 861, 866 (Tex. App. 1994) (holding guarantors of note secured by real

estate do not enjoy right to notice of foreclosure sale because statute requires notice to "each debtor who, according to the records of the holder of the debt, is obliged to pay the debt" and related provisions addressing deficiency actions expressly pertain to guarantors [internal quotation marks omitted]). Thus, in jurisdictions in which a statute limits a mortgagee's rights to a deficiency judgment (anti-deficiency statute), courts generally have construed these provisions to apply only to primary obligors and not guarantors because of their separate and distinct contractual obligations. See, e.g., *Valley Bank* v. *Larson*, 104 Idaho 772, 774, 663 P.2d 653 (1983) (holding "because [a guarantor's] obligation is independent of the principal debtor's," guarantor could not receive protection of time limit for seeking "a money judgment [which] may be sought for the balance due upon the obligation for which such deed of trust was given as security" [internal quotation marks omitted]); *Bank of Kirkwood Plaza* v. *Mueller*, 294 N.W.2d 640, 642–43 (N.D. 1980) (holding anti-deficiency statute limiting mortgagee's recovery to foreclosure with exception of separate action only against "the parties personally liable for that part of the debt" did not apply to guarantors because their liability was "not based on obligations imposed by the notes or the mortgages given to secure the notes, but on a separate and distinct contract of guaranty"); *Riverside National Bank* v. *Manolakis*, 613 P.2d 438, 441 (Okla. 1980) (holding that because guarantor's undertaking "creates a collateral obligation independent and separately enforceable from that of the principal debtor," protection of anti-deficiency statute applies only to principal debtors); see also Restatement (Third), Property, Mortgages § 8.4, reporters' note to comment (b), p. 605 (1997) ("[t]here is a substantial body of case law that denies guarantors the protection of anti-deficiency legislation").

The question, therefore, is whether § 49-1 evidences a clear intent to extinguish the otherwise independent obligations of the guarantors by making them effectively necessary parties to a claim that seeks the strict foreclosure of a mortgage. We conclude that it does not.

We begin by noting that § 49-1 lacks the clear expression found in the limited jurisdictions in which a guarantor has been deemed to be a proper party to a foreclosure claim. See *Northern Trust Co.* v. *VIII South Michigan Associates*, supra, 276 Ill. App. 3d 369 (statute expressly provides that guarantors may be permissible parties to foreclosure claim but acknowledged that any such guarantor also may be joined as party in separate count in action on such guarantor's guarantee); *Newtek Small Business Finance, Inc.* v. *Golf Ban, Inc.*, Docket No. 277747, 2008 WL 4367488, *2 (Mich. App. September 25, 2008) (holding statute granted mortgagee discretion to make guarantor party to foreclosure because statute provided that "[i]f the land contract or mortgage debt

is secured by the obligation or other evidence of debt of any other person besides the vendee or mortgagor, the plaintiff may make that person a party to the action" [internal quotation marks omitted]); see also *Washington Federal* v. *Gentry*, 179 Wn. App. 470, 482, 319 P.3d 823 (2014) (holding exception to anti-deficiency bar on further action to recover remaining amount owed on underlying obligation following nonjudicial foreclosure sale applied to guarantors because statutory language expressly stated that such sale "does not preclude an action to collect or enforce any obligation of a borrower or guarantor if that obligation, or the substantial equivalent of that obligation, was not secured by the deed of trust" [internal quotation marks omitted]).

Moreover, a review of the historical development of § 49-1 evidences that the legislature was concerned with protecting persons directly liable on the note and pledging property subject to the mortgage, in light of the foundational principle that foreclosure extinguishes the equitable right of redemption that the mortgagor retained when granting legal title to property to the mortgagee upon the execution of the mortgage. See *New Milford Savings Bank* v. *Jajer*, supra, 244 Conn. 256 n.11; *Ansonia National Bank's Appeal from Commissioners*, supra, 58 Conn. 259. At common law, it originally was established "that a foreclosure and consequent possession [of the property was] in the nature of satisfaction of *a debt secured by* [*the*] *mortgage*. It [was] deemed an appropriation of the thing pledged, in payment of the demand, for which it was security." (Emphasis added; internal quotation marks omitted.) *Fairfield Plumbing & Heating Supply Corp.* v. *Kosa*, 220 Conn. 643, 647, 600 A.2d 1 (1991); see also *Ansonia National Bank's Appeal from Commissioners*, supra, 258. Accordingly, a mortgagee was required to elect either a foreclosure action or an action on the underlying debt or obligation. *Fairfield Plumbing & Heating Supply Corp.* v. *Kosa*, supra, 647. After the legislature modified the common-law rule to allow a mortgagee to pursue a separate deficiency action after foreclosure of the mortgage; see *First Bank* v. *Simpson*, 199 Conn. 368, 374–75 n.4, 507 A.2d 997 (1986); *Ansonia National Bank's Appeal from Commissioners*, supra, 258–59; concerns arose because of potential injustices to persons remotely liable on the mortgage debt, who might lack knowledge that the property had been foreclosed, and to subsequent grantees of the property who had promised to assume and pay the mortgage debt. *Ansonia National Bank's Appeal from Commissioners*, supra, 259. Accordingly, the legislature amended the statute to return to the original law of the state, insofar as the foreclosure of a mortgage "operate[d] as a payment of the *debt to secure which the mortgage was given*, unless the creditor chose to make all the persons liable for the payment *of such debt* parties to the foreclosure proceedings."[6] (Emphasis added.) Id. The various

iterations of the statute since that time have conformed to that basic expression, mandating that the rights between the mortgagee and those liable on the underlying obligation secured by the mortgage be concluded in a single proceeding. *First Bank* v. *Simpson*, supra, 376. Thus, although this court has stated that "a deficiency judgment, in light of § 49-1, is . . . the only available means of satisfying a mortgage debt when the security is inadequate to make the foreclosing plaintiff whole"; id., 371; see also *Eichman* v. *J & J Building Co.*, supra, 216 Conn. 449 (quoting *First Bank*); such statements were directed at the debt secured by the mortgage, not secondary obligations.[7] Therefore, as one trial court correctly stated: "The right of redemption in a foreclosure action is premised on possessing an interest in the property. General Statutes §§ 49-19 and 49-20 create a right of redemption only for the owner in equity and in subsequent encumbrancers. An obligor on or a guarantor of a note secured by a mortgage, who is not a mortgagor, has no interest in the property and is not an encumbrancer." (Footnotes omitted; internal quotation marks omitted.) *Pezzello* v. *Knight Development, LLC*, Superior Court, judicial district of New London, Docket No. 4004428 (July 12, 2006) (41 Conn. L. Rptr. 575, 576).

An essential conclusion can be drawn from this jurisprudence as applied to the question before us in the present case: A mortgagee cannot enforce a mortgage obligation in a foreclosure proceeding against a guarantor because a guarantor is not a party to such an obligation. In the present case, although the guarantors are parties to the guarantee, they are not parties to the mortgage or the note—both documents were signed on behalf of the defendant.[8] The guarantors have no legal interest in the property securing the note and have no equitable or statutory right of redemption in the property. Accordingly, the plaintiff could not properly make the guarantors parties to the foreclosure claim because it could not seek to extinguish the guarantors' right of redemption, which is the purpose of foreclosure, nor in the alternative seek to enforce the note against them. The plaintiff only could seek that relief from the defendant, who had pledged its property as security for the contract between it and the plaintiff. Although the guarantors have a general interest in the foreclosure due to their separate and distinct obligation under the guarantee to pay any remaining amount due on the underlying debt,[9] that interest does not render them parties to the foreclosure. Therefore, the guarantors could not be "parties to the foreclosure" as required by § 49-1. We conclude, therefore, that the Appellate Court improperly characterized the trial court's judgment against the guarantors following the plaintiff's hearing in damages on count two as a deficiency judgment. Accordingly, § 49-1 had no effect on the plaintiff's ability to recover money damages from the guarantors

under count two following the judgment of strict foreclosure under count one.[10]

Finally, we note that it is immaterial that, in the present case, the plaintiff advanced claims to foreclose the mortgage and to enforce the guarantee in a single proceeding. It is important to recognize the distinction between a claim and a cause of action, terms that oftentimes are confused and even used interchangeably. For the purposes of the regulation of pleadings and procedure in civil actions, a plaintiff's cause of action constitutes "a single group of facts which are claimed to have brought about an unlawful injury to the plaintiff for which one or more of the defendants are liable, *without regard to the character of the legal rights of the plaintiff which have been violated.*" (Emphasis added.) *Veits* v. *Hartford*, 134 Conn. 428, 434, 58 A.2d 389 (1948). In order for the facts to constitute a single group, "the liability of each defendant must, in some aspect of the proof permissible under the allegations of the complaint, relate to and depend upon a single primary breach of duty."[11] Id., 435. Therefore, when a plaintiff asserts multiple claims, which are legal theories that arise out of and depend upon the group of facts that brought about a single primary breach of duty, there is but one cause of action. See id., 434–36; *Burgess* v. *Vanguard Ins. Co.*, 192 Conn. 124, 126–27, 470 A.2d 244 (1984). Despite there being one cause of action, the plaintiff can maintain separate claims against individual defendants, who need not be jointly liable for each claim. See *Veits* v. *Hartford*, supra, 436 (noting policy that favors parties to settle all related claims in one action).

In the present case, the plaintiff filed a two count complaint in which it elected to pursue alternative theories for recovering the debt owed under the promissory note. Count one sought to foreclose on the mortgage securing the debt, and count two sought to enforce the guarantors' obligation to pay the debt pursuant to the terms of the guarantee.[12] The liability of each party named as a defendant depended on proof of the defendant's breach of a single primary duty, namely, to pay the debt. Accordingly, the plaintiff brought a single cause of action with two claims, one brought against the defendant and one brought against the guarantors.[13] While the liability on both claims depended on proof of the defendant's default under the note, each claim was separate and distinct from the other, and, as such, the guarantors were not parties to the foreclosure claim in count one and the defendant was not party to the guarantee claim in count two.

In sum, we conclude that the trial court's rendering of a judgment of strict foreclosure had no effect on the plaintiff's ability to recover damages for the remaining unpaid debt from the guarantors under count two because the guarantors were not parties to the plaintiff's

foreclosure claim in count one, the guarantors' obligation having arisen separately under their guarantee. Therefore, the Appellate Court improperly determined that § 49-1 barred the plaintiff's recovery of damages under count two of the complaint. As such, the trial court properly granted the plaintiff's motion to strike the guarantors' notice of defense as legally insufficient, and, in turn, properly rendered judgment in the amount of $1,295,888.45 against the guarantors and in favor of the plaintiff.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.

[1] General Statutes § 49-1 provides in relevant part: "The foreclosure of a mortgage is a bar to any further action upon the mortgage debt, note or obligation against the person or persons who are liable for the payment thereof who are made parties to the foreclosure and also against any person or persons upon whom service of process to constitute an action in personam could have been made within this state at the commencement of the foreclosure . . . ."

General Statutes § 49-14 (a) furnishes the exception to § 49-1 for strict foreclosures by providing in relevant part that "[a]t any time within thirty days after the time limited for redemption has expired, any party to a mortgage foreclosure may file a motion seeking a deficiency judgment. . . ."

[2] As we note hereinafter, the named plaintiff, JP Morgan Chase Bank, N.A., assigned its interest in the subject note and mortgage to 1533 Chapel, LLC, which later was substituted as the party plaintiff. For convenience, we refer to 1533 Chapel, LLC, as the plaintiff in this opinion.

[3] At a hearing on the guarantors' objection to the hearing in damages, the court construed the guarantors' objection as raising a special defense to count two, in that they argued that the plaintiff's failure to obtain a deficiency judgment on count one barred it from collecting any damages under count two based on liability under the guarantee. Accordingly, the court instructed the plaintiff to file a responsive pleading to the notice of defense in order to create a "clean record" for appellate review, which resulted in the plaintiff filing the motion to strike.

[4] General Statutes § 49-28 provides the exception to § 49-1 for a deficiency judgment following a foreclosure by sale.

[5] A mortgage obligation could include a mortgage used to secure a line of credit agreement, letter of credit reimbursement agreement, a promise of performance, and even guarantee. See, e.g., *Devlin* v. *Wiener*, 232 Conn. 550, 551–52, 557, 656 A.2d 664 (1995) (promise to convey property secured by mortgage). If a guarantee obligation is secured by a mortgage, then the limitations of § 49-1 would necessarily apply to such obligation. In the present case, however, the guarantee is not secured by a mortgage.

[6] General Statutes (1949 Rev.) § 7191 provides: "The foreclosure of a mortgage shall be a bar to any further action upon the mortgage debt, note or obligation, unless the person or persons who are liable for the payment thereof are made parties to such foreclosure."

[7] We note that, although neither party has cited any Connecticut case law directly bearing on the question before us, our independent research has revealed a case in which this court had indicated that a predecessor to § 49-1; General Statutes (1930 Rev.) § 5080; would provide statutory authority to make guarantors proper parties to the foreclosure. See *North End Bank & Trust Co.* v. *Mandell*, 113 Conn. 241, 246, 155 A. 80 (1931). In that case, the court framed the two issues before it as: "(1) Whether the provision for a further credit of one half the difference between the appraised value and the sales price of real estate under foreclosure must be allowed before any deficiency judgment may be entered as provided in [the predecessor to General Statutes § 49-28], when the foreclosing plaintiff makes a motion for foreclosure by sale, and (2) whether the guarantors of payment of the mortgage can require such credit *when they have been made parties defendant in a foreclosure action by the plaintiff who asks a deficiency judgment against them*." (Emphasis added.) Id., 243. In reaching the conclusion that guarantors are entitled to such statutory credit, the court stated: "In the

absence of statute a guarantor of a mortgage debt is not a proper party to a foreclosure suit. 3 Jones, Mortgages (8th Ed.) §§ 1821, 1822. 'Authority is sometimes given by statute to join such obligors in foreclosure and obtain a deficiency judgment against them.' [Id.] § 1823." *North End Bank & Trust Co.* v. *Mandell*, supra, 245–46. The court then simply quoted General Statutes (1930 Rev.) § 5080 and relied on the fact that the guarantors were named as defendants in the case. Id., 246. We note that the guarantors in that case did not object to being named as defendants and both parties assumed on appeal that they were proper parties to the foreclosure. See also *Bridgeport-City Trust Co.* v. *Hirsch*, 119 Conn. 586, 588, 178 A. 423 (1935) (discussing procedural history of case in which foreclosure judgment had been opened to, inter alia, cite in guarantor as defendant in action with guarantor's consent, but not analyzing whether guarantor was proper party to foreclosure). Assuming without deciding that *Mandell* was correctly decided, to the extent that it implies that a guarantor is a proper party to a foreclosure, we decline to follow it.

[8] The guarantors' status in these proceedings, as it pertains to the question before us, is not affected by the fact that the plaintiff named the guarantors in the recitation of alleged facts in both counts. The plaintiff duplicated allegations in both counts relating to the execution of the mortgage. Although the plaintiff further alleged in count one that Zuckerman is a key principal on the note and mortgage, the record unambiguously establishes that Zuckerman signed the note and mortgage on behalf of the defendant.

[9] As support for its claim that the guarantee at issue is a separate and distinct obligation from the mortgage obligation, the plaintiff cites language in the guarantee providing as follows: "Guarantor agrees that the obligations of [the] Guarantor under this Guaranty are separate and distinct from those of [the defendant] under the Note and the other Loan Documents and expressly waives the benefit of any provision of applicable law limiting [the plaintiff's] rights to a deficiency judgment after any judicial or nonjudicial foreclosure." In response to questioning at oral argument before this court, the guarantors conceded that the plain language of the guarantee appeared to waive the very claim that they have raised on appeal. See *Connecticut National Bank* v. *Douglas*, 221 Conn. 530, 545, 606 A.2d 684 (1992) ("clear and definitive contract language can establish waiver as a matter of law"). Nonetheless, they suggested that any such waiver would be void because it would violate public policy. Ultimately, we do not address this issue because the plaintiff did not assert a separate claim of waiver in its brief to this court, and the guarantors did not include a response to any such claim in their brief.

[10] In light of our conclusion, we find the guarantors' various arguments predicated on compliance with the procedures for a deficiency judgment under § 49-14 irrelevant, as that procedure provides a limited exception for those bound by the general rule under § 49-1. Specifically, the guarantors contend that: (1) the plaintiff sought a separate deficiency judgment against them in derogation of the procedure set forth in § 49-14, pointing to the fact that the damages sought against the guarantors would be in an amount equivalent to that which could have been sought in a deficiency judgment; and (2) allowing the plaintiff to seek the damages owed under the guarantee in count two independent of the time limitations of § 49-14 would revive a constitutional defect that existed in a previous version of § 49-14 due to the lack of a time limitation. With respect to the second argument, we note that the constitutional defect in General Statutes (Rev. to 1977) § 49-14 that this court previously had identified had nothing to do with the lack of a time limitation—it pertained to the lack of proper notice and a hearing in the evaluation process. *Federal Deposit Ins. Corp.* v. *Hillcrest Associates*, 233 Conn. 153, 168, 659 A.2d 138 (1995). Furthermore, to the extent that the guarantors argue that similarly situated guarantors could potentially be harmed if a foreclosing mortgagee decided to wait until the end of the six year statute of limitations applicable to contract claims to recover the remaining amount owed on the underlying debt, we note that such is the peril whenever a contract is executed.

[11] We recognize that the term "cause of action" may have different meanings, depending on the context in which it is used. See *United States* v. *Memphis Cotton Oil Co.*, 288 U.S. 62, 68, 53 S. Ct. 278, 77 L. Ed. 619 (1933) ("[cause of action] may mean one thing when the question is whether it is good upon demurrer, and something different when there is a question of the amendment of a pleading or of the application of the principle of res judicata"). Therefore, our discussion of the parameters of a cause of action and claim in this opinion is limited to matters of procedure and is not

intended to alter established definitions and the scope of such terms within the substantive doctrines of res judicata, collateral estoppel, and relation back, which implicate different concerns. Compare, e.g., *Austin-Casares* v. *Safeco Ins. Co. of America*, 310 Conn. 640, 656, 81 A.3d 200 (2013) (relation back doctrine); *Sherman* v. *Ronco*, 294 Conn. 548, 556, 985 A.2d 1042 (2010) (same); *Lighthouse Landings, Inc.* v. *Connecticut Light & Power Co.*, 300 Conn. 325, 347–48, 15 A.3d 601 (2011) (applying Restatement [Second], Judgments § 24 [1982] in context of res judicata); *Fink* v. *Golenbock*, 238 Conn. 183, 191, 680 A.2d 1243 (1996) (res judicata); *Powell* v. *Infinity Ins. Co.*, 282 Conn. 594, 600, 922 A.2d 1073 (2007) (res judicata), with *Veits* v. *Hartford*, supra, 134 Conn. 430, 436 (motion to dismiss). We also do not intend to alter established meanings of these terms within the General Statutes.

[12] Relief in the form of a deficiency judgment is sought by way of a motion following the rendering of a judgment of foreclosure; see General Statutes §§ 49-14 and 49-28; and is not a separate "claim" that must be advanced in the complaint. See *Federal Deposit Ins. Co.* v. *Voll*, supra, 38 Conn. App. 207 ("[D]eficiency proceedings are not, and never have been, independent actions on the debt. Rather, they are part of the main foreclosure suit." [Internal quotation marks omitted.]).

[13] We recognize that this court has repeatedly stated that "[a] note and a mortgage given to secure it are separate instruments, executed for different purposes and in this [s]tate action for foreclosure of the mortgage and upon the note are regarded and treated, in practice, as separate and distinct causes of action, although both may be pursued in a foreclosure suit. *Mechanics Bank* v. *Johnson*, 104 Conn. 696, 701, 134 [A. 231 (1926)]; *German* v. *Gallo*, 100 Conn. [708, 711, 124 A. 837 (1924)]; *Staples* v. *Hendrick*, 89 Conn. 100, 93 [A. 5 (1915)]." (Internal quotation marks omitted.) *Hartford National Bank & Trust Co.* v. *Kotkin*, supra, 185 Conn. 581. This language does not affect our analysis, however, because it stands for the proposition that if a mortgagee was to bring an action to foreclose a mortgage or an action to enforce an obligation under a note independently from the other, what constitutes a claim or cause of action would then be coterminous, as the mortgagee would be advancing a single cause of action with essentially a single claim within it. "It is now an established principle in our law of civil procedure that two suits shall not be brought for the determination of matters in controversy between the same parties, whether relating to legal or equitable rights, or to both, when such determination can be had as effectually and properly in one suit." (Internal quotation marks omitted.) *Veits* v. *Hartford*, supra, 134 Conn. 436. When a mortgagee seeks to foreclose a mortgage and enforce the note within one lawsuit, as is common practice, the foreclosure and enforcement of the note are considered claims in the alternative within a single cause of action because such claims arise from a single group of facts that are claimed to have brought about an unlawful injury to the mortgagee.

————————————————